UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARLING INTERNATIONAL, INC., *et al.*,

        Plaintiff,

    v.

BAYWOOD PARTNERS, INC., *et al.*,

        Defendants.

————————————————/

No. C-05-3758 EMC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS OR FOR A
MORE DEFINITE STATEMENT AND
REQUEST FOR JUDICIAL NOTICE
(Docket Nos. 11, 15)**

## I.   INTRODUCTION

Plaintiff Darling International, Inc. ("Darling") has filed suit against Defendants Baywood Partners, Inc. ("Baywood") and Regan Holding Corp. ("Regan"). Currently pending before the Court is Baywood's Rule 12(b)(6) motion to dismiss or Rule 12(e) motion for a more definite statement. This matter came on for hearing on November 30, 2005. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby GRANTS the motion to dismiss Darling's First, Second, and Third Causes of Action. The Court DENIES the motion to dismiss as to the Fourth, Fifth, Sixth and Seventh Causes of Action.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Darling filed its complaint on September 16, 2005. Defendant Baywood filed the present motion to dismiss or for more definitive statement on October 11, 2005. That same day, Defendant Regan filed its answer to the complaint, and has not joined Baywood in the present motion. The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. sec. 636(c).

In its complaint, Darling makes the following allegations.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Darling has record title to certain property located in Sonoma County ("Darling property").

2   *See* Compl. ¶ 8.  Baywood and Regan have record title to nearby property ("Baywood property" and

3   "Regan property").  *See* Compl. ¶¶ 9-10.

4   A.   Quiet Title Allegations

5        1.   Purchase Agreement

6        On April 30, 1990, Darling and Baywood entered into a Purchase and Sale Agreement

7   ("Purchase Agreement") under which Darling agreed to sell its property to Baywood.  *See* Compl. ¶¶

8   13-14 & Ex. 1 (Purchase Agreement).

9        Under the Agreement, Baywood immediately delivered into an escrow account a deposit of

10  $10,000.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 2.2, titled "Deposits").  Baywood's obligation

11  to purchase, however, was expressly contingent upon and subject to its approval of the Darling

12  property, prior to July 6, 1990, after an inspection.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 3.1,

13  titled "Property Inspection").  Baywood would evidence its satisfaction with the property by

14  depositing a sum of $140,000 into the escrow account -- this sum being known as the Second

15  Deposit.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 3.1, titled "Property Inspection").  Baywood's

16  failure to make the Second Deposit by July 6, 1990 would be deemed nonapproval of the property,

17  and "this transaction shall be cancelled."  *See id*.  The next day, the escrow holder would return to

18  Baywood the initial deposit.  *See id*.

19       Under the Agreement, the closing of the transaction between Darling and Baywood would

20  take place "thirty (30) calendar days after the date on which all conditions precedent to the Closing

21  described in Paragraph 6.3, below, may have occurred."  Compl., Ex. 1 (Purchase Agreement ¶ 6.1,

22  titled "Closing; Timing").  The conditions precedent listed in Paragraph 6.3 of the Agreement

23  included: (1) Baywood's approval of the Darling property after inspection and (2) Darling's

24  completion of certain remediation work or entry into a Guaranteed Contract for completion of the

25  remediation work.  *See* Compl., Ex. 1 (Purchase Agreement ¶¶ 6.3.1 and 6.3.3).

26       Under the Agreement, Darling had certain remediation obligations to satisfy, namely, to

27  remove underground tanks situated on the Darling property and to remediate hazardous materials on

28  the Darling property.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 4.1, titled "Seller's Remediation

Obligation”).  Darling had to satisfy these obligations prior to closing, or it could satisfy the obligations after closing but only on certain conditions.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 4.1, titled “Seller’s Remediation Obligation, and ¶ 4.6, titled “Status of Remediation Work at Closing”).  More specifically, if the remediation work was not done on or before the closing date, then Darling would have to enter into a written contract with a contractor (called the “Guaranteed Contract”) to perform the remediation work for a stipulated sum or a guaranteed-not-to-exceed price. *See id.* and ¶ 4.8 (titled “Completion of Remediation Work After Closing”).

Note, however, that, if the estimated cost of remediation would exceed $200,000 or could not be calculated with reasonable certainty by July 29, 1990, then, within thirty days, Darling could elect to postpone the remediation work by delivery of a written notice to Baywood.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 4.5, titled “Remediation Work”).  Baywood would then have several options:

(1)   It could terminate the Purchase Agreement.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 4.5.1).

(2)   It could (but would not be required to) pay the remediation cost in excess of $200,000 and, by written notice to Darling, demand that Darling perform forthwith all acts needed for the close of escrow.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 4.5.2).

(3)   It could do neither (1) nor (2), in which case Darling agreed that, “by a date no later than fifty-nine (59) years from the date of execution of this Agreement, [it] shall either complete the Remediation Work . . . or shall contract for the completion of the Remediation Work . . . and shall complete the Remediation Work after the Close of Escrow.  The Close of Escrow shall occur within thirty (30) calendar days of the date [Darling] satisfies the condition described in this Paragraph . . . , subject to the terms of Paragraph 6.3, below [regarding Baywood’s conditions precedent to closing].”  Compl., Ex. 1 (Purchase Agreement ¶ 4.5.3).

2.   Memorandum of Agreement

The Purchase Agreement specified that it would not be recorded in the official records of Sonoma County.  *See* Compl., Ex. 1 (Purchase Agreement, titled “Recordation of Memorandum”). However, “a Memorandum hereof shall be recorded by either party at any time after the date of

3

execution [of the Purchase Agreement] in the form and substance attached . . . as Exhibit "E" [to the Purchase Agreement]."  Compl., Ex. 1 (Purchase Agreement ¶ 18.14, titled "Recordation of Memorandum").

On May 31, 1990 -- *i.e.*, about a month after execution of the Purchase Agreement -- Darling and Baywood executed a Memorandum of Agreement.  *See* Compl. ¶ 15 & Ex. 2.  The Memorandum of Agreement was recorded in the County Recorder's Office of Sonoma County on June 13, 1990.  *See* Compl. ¶ 16.  The Memorandum of Agreement provided, *inter alia*, that "[t]he term of the [Purchase] Agreement commenced April 30, 1990 and shall extend for a maximum period of time of fifty-nine (59) years thereafter.  Escrow for the transfer of the Property shall close at a time and in the manner described in the Agreement."  Compl., Ex. 2 (Memorandum of Agreement).

3.    Amendments to Purchase Agreement

After the Purchase Agreement was signed, the parties executed several amendments to the Purchase Agreement.  *See* Compl. ¶¶ 17-18.  The Fourteenth Amendment was executed on February 1, 1997.  *See* Compl. ¶ 17 & Ex. 3 (Fourteenth Amendment).  It provided in part that, because a tank report was taking longer to finalize than expected and

> in order to afford Purchaser the opportunity to inspect the Subject Property in the manner originally contemplated by the Agreement, and to preserve otherwise the benefits to Seller of the Agreement, Seller and Purchaser agree to extend further the time period for inspection of the Subject Property, in the manner described in Paragraph 3.1 of the Original Agreement as amended by the Amendments from February 1, 1997 to May 1, 1997.  If Purchaser should approve of the Subject Property, the date Purchaser must make the Second Deposit shall similarly be extended from February 1, 1997 to May 1, 1997.

Compl., Ex. 3 (Fourteenth Amendment).

On April 22, 1997, Baywood asked Darling to further extend the Purchase Agreement with a Fifteenth Amendment.  *See* Compl. ¶ 19 & Ex. 4 (letter enclosing proposed Fifteenth Amendment).  Darling did not sign the proposed Fifteenth Amendment.  *See* Compl. ¶ 20.

4.    Subsequent Events

On May 1, 1997, Darling sent a letter to Baywood stating, that Darling had "received written confirmation from the County of Sonoma Department of Health Services that no further

4

**United States District Court**
For the Northern District of California

1  environmental remedial action is needed."  Compl., Ex. 5 (letter).  Darling added that it was "of the

2  opinion that Darling's remediation obligations under the Agreement are now complete" and, "[s]ince

3  no further remediation is required, there does not appear to be any reason to continue to extend [the]

4  time periods under the Agreement."  Compl., Ex. 5 (letter).  Darling stated, however, that it would

5  "agree to extend Baywood's inspection period under Section 3.1 [of the Purchase Agreement] for a

6  reasonable period of time of up to 30 days as an accommodation to Baywood so that Baywood can

7  be certain that it desires to go forward with the acquisition."  Compl., Ex. 5 (letter).  According to

8  Darling, "at the expiration of the inspection period, Baywood would be required to deposit the

9  second deposit of $150,000 and would be required to pay the balance of the purchase price and close

10  the transaction within 30 days thereafter."  Compl., Ex. 5 (letter).

11  Baywood did not deliver the Second Deposit by the date required by the Fourteenth

12  Amendment to the Purchase Agreement, *i.e.*, by May 1, 1997.  *See* Compl. ¶ 28.  Instead, it made the

13  Second Deposit several years later on February 16, 2000.  *See* Compl. ¶ 40(b).  Also, Baywood did

14  not request closing of the Purchase Agreement within thirty days of the delivery of the Second

15  Deposit.  *See* Compl. ¶ 27.

16  B.   Easement Allegations

17  According to the complaint, the Baywood and Regan properties are a former railroad right of

18  way.  *See* Compl. ¶ 45.  They transect a public roadway known as Casa Grande Road.  *See* Compl. ¶

19  46.  The portion of the Baywood and Regan properties that transects Casa Grande Road is referred to

20  as the Casa Grande Road Transect.  *See* Compl. ¶ 46.

21  1.   Public Dedication

22  People who seek ingress and egress to the Darling property must use Casa Grande Road and,

23  as a result, must and do cross the Casa Grande Road Transect.  *See* Compl. ¶ 47.  For at least five

24  consecutive years, the public has used the Casa Grande Road Transect to gain access to the Darling

25  property as well as to gain access to the Petaluma River and areas along the edge of the river.  *See*

26  Compl. ¶ 48.

27

28

**United States District Court**

For the Northern District of California

2.     Prescriptive Easement

Darling has used the Casa Grande Transect for ingress and egress to its property for more than five consecutive years *preceding* a lease that Darling and Baywood executed for the Transect. *See* Compl. ¶ 52.

3.     Common Ownership

The Darling, Baywood, and Regan properties were once under common ownership such that there is an implied right of ingress and egress across the Baywood and Regan properties to the Darling property.  *See* Compl. ¶ 55.

### III.     DISCUSSION

A.     Legal Standard

Baywood has filed a motion to dismiss Darling's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Such a motion should be granted "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' construing the complaint in the light most favorable to the plaintiff." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

For a motion to dismiss, "[a] court may . . . consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

In addition, "[a] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir.), *cert. denied*, 525 U.S. 1001 (1998).

Finally, "if a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff's complaint does not explicitly refer to it" -- so long as "the authenticity of [the document] is not contested, and [is one] upon which the plaintiff's complaint necessarily relies." *Id.* at 706.  "[T]he policy concern underlying the rule [is to]

6

1    [p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to

2    documents upon which their claims are based." *Id.*

3        Baywood asserts that the Court should consider the documents attached to the Pahland

4    declaration pursuant to the Ninth Circuit's holding in *Parrino*.  Baywood also asserts that the Court

5    should take judicial notice of certain other documents.  Darling challenges both of Baywood's

6    assertions.  However, the basis of Darling's challenge does not have to do with the authenticity of

7    any document.

8        1.    Pahland Declaration

9        The documents attached to the Pahland declaration are letters exchanged between Darling

10   and Baywood.  The Court declines consideration of these documents because the contents of such

11   documents are not alleged in Darling's complaint.  *See Parrino*, 146 F.3d at 705 ("A district court

12   ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint

13   and whose authenticity no party questions, but which are not physically attached to the [plaintiff's]

14   pleading.'").  The closest case is Exhibit A, which is a letter dated February 16, 2000 from Baywood

15   to Darling, informing Darling, *inter alia*, that the Second Deposit of $140,000 was made.  In its

16   complaint, Darling alleges that Baywood funded the Second Deposit on February 16, 2000.  But this

17   single allegation does not allege the entire content of the letter in the complaint.  The letter discusses

18   matters beyond the Second Deposit.

19       Furthermore, the Court will not consider any of the documents attached to the December 16,

20   2005 Pahland declaration because Darling's complaint does not *necessarily* rely on any of the

21   documents.  *See id.* at 706 (stating that, "if a plaintiff's claims are predicated upon a document, the

22   defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff's complaint

23   does not explicitly refer to it" -- so long as "the authenticity of [the document] is not contested, and

24   [is one] upon which the plaintiff's complaint necessarily relies").

25       2.    Baywood's Request for Judicial Notice

26       Baywood asks the Court to take judicial notice of documents recorded in the official records

27   of Sonoma County -- namely, grant deeds, leases, and easement agreements.  *See* Req. for Judicial

28   Notice in Support of Baywood's Mot. to Dismiss.  Such documents have been judicially noticed in

other cases.  *See, e.g.*, *Western Federal Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of "certain documents contained in the public records of the Santa Clara County Recorder including the five Deeds of Trust issued by T.D. Service Company to Western Federal and the Declaration of Covenants, Conditions, and Restriction of the Cedar Terrace Condominiums").

Darling argues that judicial notice is not appropriate in the instant case.

> While courts may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what those contents mean.
>
> Judicial notice may be taken of the existence and authenticity of certain public and quasi public documents, but '[t]o the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice.'"

Opp'n at 14:23-15:1 (quoting *United States v. Southern Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004)).

However, Darling does not make clear the extent to which it disputes the contents of the grant deeds, leases, and easement agreements.  The Court hereby GRANTS the request for judicial notice with respect to the existence and authenticity of the public documents except that "[t]o the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice."  *Del Puerto Water Dist. v. United States Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003); *see also Cal. ex rel. RoNo, LLC v. Altus Fin. S.A.*, 344 F.3d 920, 931 n.8 (9th Cir. 2003) ("All requests for judicial notice are GRANTED to the extent that they are compatible with Federal Rule of Evidence 201 and do not require the acceptance of facts 'subject to reasonable dispute.'").

3.    Locey Declaration

Baywood also suggests that the Court should consider the declaration of John Locey, a civil engineer, because the information provided in the declaration (essentially, a map) is based on the public records above.  However, although the public records may be judicially noticed, that does not make the declaration judicially noticeable as well.  Federal Rule of Evidence 201 limits judicial

1  notice to facts "(1) generally known within the territorial jurisdiction of the trial court or (2) capable

2  of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

3  questioned." Fed. R. Evid. 201.

4      The Court takes judicial notice of Exhibit 1 to the Declaration of John Locey for the limited

5  purpose of illustration in evaluating Baywood's Motion to Dismiss Complaint or For a More

6  Definite Statement.

7         4.   <u>Conversion to Motion for Summary Judgment</u>

8      Finally, Baywood asserts that, even if the Court does not consider the documents provided

9  with respect to the motion to dismiss, the Court could consider them by treating the motion to

10  dismiss as one for summary judgment. *See* Mot. at 3 n.1.

11      The Wright & Miller treatise notes that a court has discretion in deciding whether to consider

12  documents outside the pleadings, thereby converting a motion to dismiss into a motion for summary

13  judgment. *See* Wright & Miller, Fed. Prac. & Proc. § 1366.

> This discretion generally will be exercised on the basis of the district
> court's determination of whether or not the proffered material, and the
> resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure,
> is likely to facilitate the disposition of the action. When the
> extra-pleading material is comprehensive and will enable a rational
> determination of a summary judgment motion in accordance with the
> standard set forth in Rule 56, the district court is likely to accept it;
> when it is scanty, incomplete, or inconclusive, the district court
> probably will reject it.
>
> Similarly, the district court's attitude toward whether a full trial
> on the merits is necessary or whether discovery prior to the utilization
> of the summary judgment procedure would be desirable will have a
> great bearing on its willingness to employ the conversion technique.

22  *Id.*

23      The Moore's treatise also explains when conversion may be appropriate.

> Because of the required early timing of a Rule 12(b)(6) motion,
> the option of converting it to a Rule 56 summary judgment motion
> tends to have limited utility. Whenever discovery may be needed to
> determine whether the matters advanced by the movant outside of the
> pleadings may present genuine issues of material fact (thus precluding
> summary judgment), Rule 56(f) comes into play. That in turn will
> likely lead to delays, and often the need for considerable fleshing out
> of the facts of the case, contrary to the notion of the threshold
> presentation and disposition of motions to dismiss.

**United States District Court**
For the Northern District of California

1

2
     Courts tend to use the conversion option only in situations in
which the materials extrinsic to the pleadings are incontrovertible and

3
pose discrete and dispositive issues.  Examples of such extrinsic
material include a government handbook establishing the absence of

4
an employment contract as a matter of law, plaintiff's depositions
establishing a limitations bar, and a stipulation, incorporated into a

5
court order in previous litigation, that operated to bar the instant
action.

6 2-12 Moore's Fed. Prac. -- Civ. § 12.34[3][a].

7    In the instant case, the Court finds conversion inappropriate because the extrinsic material is

8 neither comprehensive, incontrovertible, nor dispositive.

9 B.  Quiet Title Claims

10    In its complaint, Darling asserts several claims related to its request for an order quieting title

11 to the Darling property.  Those claims are as follows: (1) quiet title pursuant to California Civil Code

12 § 886.020; (2) quiet title pursuant to California Civil Code §§ 884.010-20; (3) quiet title pursuant to

13 California Civil Code § 2911; and (4) declaratory relief (*i.e.*, that Baywood has no interest in the

14 Darling property).

15    1.  Quiet Title Pursuant to California Civil Code § 886.020

16    In its first cause of action, Darling claims that it is entitled to an order quieting title to the

17 Darling property pursuant to California Civil Code § 886.020.  This statute provides as follows:

18
    If the party to whom title to real property is to be conveyed pursuant to
    a recorded contract for the sale of real property fails to satisfy the

19
    specified conditions set forth in the contract and does not seek
    performance of the contract or restitution of amounts paid under the

20
    contract, the party shall, upon demand therefor made after the
    operative date of this chapter, execute a release of the contract, duly

21
    acknowledged for record, to the party who agreed to convey title.
    Willful violation of this section by the party to whom title is to be

22
    conveyed without good cause makes the party liable for the damages
    the party who agreed to convey title sustains by reason of the

23
    violation, including but not limited to court costs and reasonable
    attorney's fees in an action to clear title to the real property.  Nothing

24
    in this section makes a release or a demand therefor a condition
    precedent to an action to clear title to the real property.

25

26 Cal. Civ. Code § 886.020.  According to Darling, Baywood failed to satisfy the specified conditions

27 set forth in the Purchase Agreement by, *e.g.*, failing to timely fund the Second Deposit.  *See* Compl.

28 ¶ 28 ("Because the Second Deposit was not delivered by the date required in the Fourteenth

United States District Court

For the Northern District of California

1   Amendment, the Purchase Agreement automatically terminated and Baywood has no rights to

2   purchase the Darling property.").  In addition, "Baywood did not request closing of the Purchase

3   Agreement within thirty (30) days of the delivery of the Second Deposit."  Compl. ¶ 27.

4          In its motion to dismiss, Baywood argues that Darling has failed to state a claim for relief

5   under § 886.020 because the statute applies only to a contract which requires conveyance of title to

6   the property within one year from the date of formation of the contract.  Cal. Civ. Code § 886.010(a)

7   provides that, as used in this chapter covering unperformed contracts for the sale of real property,

8   "'[c]ontract for sale of real property' means an agreement wherein one party agrees to convey title to

9   real property to another party upon the satisfaction of specified conditions set forth in the contract

10  and which requires conveyance of title within one year from the date of formation of the contract."

11         According to Baywood, the Purchase Agreement does not require conveyance of title within

12  one year from the date of formation (*i.e.*, by April 30, 1991).  Baywood points out that, under the

13  Agreement, if the cost of remediation were to exceed $200,000, then Darling could postpone the

14  remediation work, at which point, if Baywood did not then decide to terminate the Agreement or pay

15  the amount in excess of remediation, Darling would then have fifty-nine years to complete the

16  remediation work or enter into a Guaranteed Contract for the completion of the remediation work.

17  *See* Compl., Ex. 1 (Purchase Agreement ¶ 4.5).  Escrow would then close within thirty days of

18  Darling satisfying this condition of completing the work or contracting for its completion.  *See*

19  Compl., Ex. 1 (Purchase Agreement ¶ 4.5.3).  Thus, the conveyance of the Darling property might

20  not take place for as long as fifty-nine years.  *See also* Compl., Ex. 2 (Memorandum of Agreement)

21  (providing, *inter alia*, that "[t]he term of the [Purchase] Agreement commenced April 30, 1990 and

22  shall extend for a maximum period of time of fifty-nine (59) years thereafter").

23         In response, Darling argues that the Purchase Agreement is not, as asserted by Baywood, "a

24  59-year agreement."  Opp'n at 4.  According to Darling, "[t]he 59-year period upon which Baywood

25  relies does not refer to the conveyance of title (as per section 886.010), but to the completion of, or

26  the contracting for the completion of, the 'Remediation Work,' which the Purchase Agreement

27  provides may occur after the 'Close of Escrow.'"  *Id.*

28

1       Darling's argument is not persuasive.  Under Paragraph 4.5.3 of the Purchase Agreement,

2  escrow would not close -- and therefore title would not be conveyed -- until thirty days after Darling

3  either completed the remediation work or entered into a Guaranteed Contract for the completion of

4  the remediation work, and Darling had fifty-nine years to do either.  While it could take less than

5  one year for title to be conveyed, it could take longer.  Section 886.010(a) *requires* that the contract

6  be conveyed within one year from the date of formation of the contract.  It does not apply to the

7  Purchase Agreement as a matter of law.

8       Furthermore, Baywood contends that Section 886.020 is inapplicable where, as here, the

9  buyer seeks to perform.  *See* Mot. Dismiss at 9 n.3.[1]  Section 886.020 provides: "If the party to

10  whom title to real property is to be conveyed pursuant to a recorded contract for the sale of real

11  property fails to satisfy the specified conditions set forth in the contract *and does not seek*

12  *performance of the contract or restitution of amounts paid under the contract*, the party shall, upon

13  demand therefor made after the operative date of this chapter, execute a release of the contract . . . ."

14  Cal. Civ. Code § 886.020 (emphasis added.).  In the instant case, Baywood apparently does seek

15  performance of the contract, having requested close of escrow and tendered the balance of the

16  purchase price into escrow in 2005.  *See* Compl. ¶ 40(b).  Based on the statutory language, Section

17  886.020 is inapplicable to Darling's claim herein.[2]

18       The Court hereby GRANTS Baywood's motion to dismiss the First Claim for Relief under

19  § 886.020 of the California Civil Code for the reasons stated above.  It is dismissed with prejudice.

20

21

22

23       [1] Baywood actually cites § 896.070 instead of § 886.020.  However, there is no § 896.070 under the California Civil Code.  Presumably, this was a typographical error on the part of Baywood.

24       [2] Baywood argues that "Darling's contention that the Purchase Agreement 'automatically

25  terminated' cannot be supported as a matter of law."  Mot. at 9.  This argument is meritless because there is a basis for Darling's contention that the Agreement automatically terminated when Baywood

26  did not tender the Second Deposit within the time specified by the Fourteenth Amendment.  According to Baywood, it could not tender the Second Deposit by that time because Darling had not, *e.g.*, provided

27  documents needed for Baywood to complete the inspection of the property.  However, in its complaint, Darling alleges that it "completed all of its obligations under the Purchase Agreement, or such have been

28  waived."  Compl. ¶ 30.  For purposes of the motion to dismiss, the Court must accept this allegation as true.

United States District Court

For the Northern District of California

2.       Quiet Title Pursuant to California Civil Code §§ 884.010-.020

In its second cause of action, Darling claims that, as an alternative, if the Purchase Agreement may be viewed as an option, then Darling is entitled to an order quieting title to the Darling property pursuant to California Civil Code §§ 884.010-.020.  *See* Opp'n at 6 ("Darling's Second Claim for Relief is in the alternative, and is that the purchase agreement is nothing but an option agreement which has expired.").  Section 884.010 provides as follows:

> If a recorded instrument creates or gives constructive notice of an option to purchase real property, the option expires of record if no conveyance, contract, or other instrument that gives notice of exercise or extends the option is recorded within the following times:
>
> (a)      Six months after the option expires according to its terms.
>
> (b)      If the option provides no expiration date, six months after the date the instrument that creates or gives constructive notice of the option is recorded.

Cal. Civ. Code § 884.010.  And § 884.020 provides that,

> [u]pon the expiration of record of an option to purchase real property, the recorded instrument that creates or gives constructive notice of the option ceases to be notice to any person or to put any person on inquiry with respect to the exercise or existence of the option or of any contract, conveyance, or other writing that may have been executed pursuant to the option.

*Id.* § 884.020.

In its motion to dismiss, Baywood argues that the Purchase Agreement in this case cannot as a matter of law be an option agreement because "[a]n option agreement is a unilateral contract where an optionor agrees to keep an offer to purchase open for a specified period of time in return for the optionee's payment of option consideration" and the Purchase Agreement here is a bilateral agreement, requiring "a mutuality of performance."  Mot. at 10-11.

Baywood is correct that an option agreement is a unilateral contract and not a bilateral one.  *See* 1 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 2:7, p. 19  ("The option agreement is a *unilateral contract* whereby, for consideration, the optionor promises not to revoke the offer in exchange for the *act* of the offeree of payment of the option consideration.").  Indeed, in discussing the difference between a purchase agreement and an option agreement, state courts have explained

1  that "[a]n option is not an agreement to convey. . . . The distinction between a contract to purchase

2  or sell real estate and an option to purchase is, that the contract to purchase or sell creates a mutual

3  obligation on the one party to sell and on the other to purchase, while an option merely gives the

4  right to purchase within a limited time without imposing any obligation to purchase." *Schmidt v.*

5  *Beckelman*, 187 Cal. App. 2d 462, 469-70 (1960) (internal quotation marks omitted); *see also Allen*

6  *v. Smith*, 94 Cal. App. 4th 1270, 1279 (2002) ("An option contract relating to the sale of land is . . .

7  not a sale of the property but is a sale of the right to purchase.") (internal quotation marks omitted).

8  "A legitimate option ordinarily consists of an agreement to grant an irrevocable right to purchase for

9  independent consideration, and a separate purchase and sale agreement attached as an exhibit

10  thereto." *Id.* at 1280.  However, ultimately, "[w]hether an instrument is an option or a sales contract

11  is to be determined, not by its title or form but by the obligations imposed as evidenced by the terms

12  of the instrument *and* the surrounding circumstances." *Scarbery v. Bill Patch Land & Water Co.*,

13  184 Cal. App. 2d 87, 100 (1960) (emphasis added).

14       Darling argues that the Purchase Agreement in this case could be an option agreement

15  because, at this early stage in the proceedings, any ambiguities in the contract should be resolved in

16  its favor as the plaintiff and because the Memorandum of Agreement specifically states that,

17  "[u]nder certain circumstances, the Agreement may be converted into an option agreement."

18  Compl., Ex. 2.  In response, Baywood contends that the Purchase Agreement here is "not uncertain

19  or ambiguous" so that "[t]he Court can and should determine that the Purchase Agreement is a

20  bilateral sales agreement from the text alone."  Reply at 6.  Baywood also asserts that the

21  Memorandum of Agreement's use of the word "'option' is not dispositive," especially when the

22  Purchase Agreement itself did not contain the term.  *Id.*

23       To the extent there is a distinction between an option and a purchase agreement, as

24  recognized by the authorities cited above, and apparent in the statutory scheme which addresses

25  separately agreements to convey property under § 886.10 *et seq.* and options under §§ 884.010 *et*

26  *seq.*, the purchase agreement in this case has all the characterizations and incidents of a purchase

27  agreement.  It is so denominated.  Compl., Ex. 1 ("Agreement of Purchase and Sale").  It imposes

28  bilateral obligations.  The body of the agreement itself makes no reference to any option.  The fact

14

**United States District Court**
For the Northern District of California

1    that the purchase agreement contains an inspection contingency, a condition common to purchase

2    agreements for real property, does not covert a purchase agreement into an option lest the distinction

3    between the two be eviscerated.

4        Darling relies on Exhibit E to the Purchase Agreement (a Memorandum of Agreement to be

5    recorded) which refers to the possibility of converting into an option agreement.  The Purchase

6    Agreement states that "a Memorandum hereof shall be recorded by either party at any time after the

7    date of execution [of the Purchase Agreement] in the form and substance attached . . . as <u>Exhibit "E"</u>

8    [to the Purchase Agreement]."  Compl., Ex. 1 (Purchase Agreement ¶ 18.14, titled "Recordation of

9    Memorandum").  Exhibit E provides that, "[u]nder certain circumstances, the Agreement may be

10    converted into an option agreement."  Compl., Ex. 1 (Purchase Agreement, Ex. E).  If anything, this

11    language suggests that as an initial matter, the Purchase Agreement is not an option -- it has to be

12    "converted" into an option agreement.  Moreover, neither the Memorandum nor the Purchase

13    Agreement specifies the circumstances under which the Purchase Agreement would be converted

14    into an option agreement.  Nor do they state the terms of such an option, such as when it must be

15    exercised.  No independent consideration was paid for any such option.  Finally, the Memorandum is

16    only an exhibit to the Purchase Agreement designed to provide the form by which notice would be

17    given to the world of the Agreement.  Given the complete absence of anything in the Purchase

18    Agreement itself that creates an option, nothing suggests the Memorandum was intended to create

19    any new or different substantive rights not provided for in the Agreement itself.

20        For these reasons, the Purchase Agreement is not, as a matter of law, an option agreement

21    within the meaning of California Civil Code §§ 884.010-.020.  Plaintiff fails to state a claim

22    thereunder.  Baywood's motion to dismiss the Second Claim for Relief is GRANTED with

23    prejudice.

24        3.      <u>Quiet Title Pursuant to California Civil Code § 2911</u>

25        In its third cause of action, Darling seeks to quiet title by claiming that both the Purchase

26    Agreement and the Memorandum of Agreement are null and void.  Compl. ¶ 38.  Darling alleges

27    that (1) Baywood is barred by the statute of limitations provided in California Code of Civil

28    Procedure § 337 from enforcing the terms of the Purchase Agreement; and (2) "[b]ecause Baywood

United States District Court

For the Northern District of California

1   cannot enforce the Purchase Agreement, Section 2911 of the California Civil Code provides that

2   Baywood's recorded lien interest in the Darling Property [*i.e.*, the Memorandum of Agreement]

3   cannot be enforced."  Compl. ¶ 37.

4          Section 337 provides for a four-year statute of limitations for "[a]n action upon any contract,

5   obligation or liability founded upon an instrument in writing."  Cal. Code Civ. Proc. § 337.  Section

6   2911 provides that "[a] lien is extinguished by the lapse of time within which, under the provisions

7   of the Code of Civil Procedure, . . . [a]n action can be brought upon the principal obligation."  Cal.

8   Civ. Code § 2911(1).

9          In its motion to dismiss, Baywood argues that this claim for relief as against the

10  Memorandum of Agreement must fail because the Memorandum of Agreement does not constitute a

11  "lien" under § 2911.[3]  A lien is defined as "a charge imposed in some mode other than by a transfer

12  in trust upon specific property by which it is made security for the performance of an act," *id.* §

13  2872.  The "generally accepted meaning" of the word "security" is "the giving of assurance by

14  means of mortgage, pledge, or other lien that the obligation will be performed."  *McClintock v.*

15  *Bathurst*, 23 Cal. App. 2d 647, 647 (1937).  A lien "is typically 'but an incident of the debt secured'

16  and 'presupposes the existence of a debt.'"  *Parnell v. Adventist Health System/West*, 35 Cal. 4th

17  595, 602 (2005) (citations omitted).  *See* Black's Law Dictionary (8th ed. 1994), p. 941 (defining

18  lien as a "legal right or interest that a creditor has in another's property, lasting usu. until a debt or

19  duty that it secures is satisfied).

20         According to Baywood, "[t]he Memorandum of Agreement is not a security.  The purpose of

21  the Memorandum of Agreement is only to put the world on record notice of the Purchase

22  Agreement.[4]  [It] in and of itself does nothing to ensure performance.  If the Purchase Agreement is

23  breached, it cannot be foreclosed upon through action based on the Memorandum.  Accordingly, it

24  has none of the characteristics of a lien."  Mot. at 12; *see also* Reply at 7 ("The fundamental

25

26         [3] Baywood's motion to dismiss on this claim does not address that part of the third claim
    contending the Purchase Agreement itself is null and void because of the statute of limitations.

27

28         [4] *See* Compl., Ex. 2 (Memorandum of Agreement) ("The parties hereto wish to reflect in the
    Official Records of the County of Sonoma, official notice of the [Purchase] Agreement.").

characteristic of a security is that a party receives a *property right* if the secured act is not performed.") (emphasis added).

In response, Darling contends that the Memorandum of Agreement is a security because, by its presence, it "forces performance and prohibits transfer." Opp'n at 8. Darling argues that a "security interest" is not an independent thing, but arises from "an underlying obligation," citing *Parnell*.

Under Darling's reasoning, however, any contract could constitute a lien vis-a-vis any third party with notice of it. In *Parnell*, the California Supreme Court did not suggest that any contractual obligation gives rise to a lien. Rather, it merely held that under the Hospital Lien Act, a lien requires the existence of an underlying debt owed by the patient to the hospital. *Id.* at 609. The lien under the Act was typical inasmuch as it constituted security for a debt.

The Court finds Baywood's agreement persuasive. The recorded Memorandum of Agreement itself cannot be foreclosed upon to enforce any obligation. It is not security for an existing debt. When the Memorandum was recorded there was no debt. It only serves to give notice to the public of the Purchase Agreement.

In this regard, the Memorandum of Agreement is similar to a *lis pendens*, which is "recorded by someone *asserting* a real property claim, to give notice that a lawsuit has been filed which *may*, if that person prevails, affect title to or possession of the real property described in the notice. ([Cal. Code Civ. Proc.] §§ 405.2, 405.4, 405.20.)" *Federal Deposit Insurance Corp. v. Charlton*, 17 Cal. App. 4th 1066, 1069 (Cal. App. 2 Dist., 1993). This recorded notice does not, however, create a security interest or a lien. California courts have held that "[a] transfer of the property after a lis pendens is recorded binds the transferee to a judgment subsequently rendered in the pending action but it does *not* make the party who recorded the lis pendens a secured creditor." *Id.* at 1069 (citing *Urez Corp. v. Superior Court*, 190 Cal. App. 3d 1141, 1144 (Cal. App. 2 Dist., 1987) and *Wardley Development Inc. v. Superior Court*, 213 Cal. App. 3d 391, 399 (1989)).

Where the parties intended the creation of a security interest or lien, the Purchase Agreement so provided. The Agreement provides: "At the closing, Seller shall grant Purchaser a security interest in the Holdback [portion of the purchase price] and shall execute a security agreement in the

17

United States District Court

For the Northern District of California

1   form attached hereto as <u>Exhibit "C"</u> and a UCC-1 Financing Statement in the form required by

2   Purchaser and its counsel."  Compl., Ex. 1 (Purchase Agreement ¶ 6.6, titled "Holdback").  Whereas

3   Exhibit C to the Purchase Agreement (titled "Security Agreement") evidences the parties' intent to

4   create an enforceable security interest in the holdback amount held in escrow (but not a lien on the

5   Darling property), Exhibit E merely served to put third parties on notice of the Purchase Agreement.

6          The Memorandum of Agreement does not, as a matter of law, constitute a lien.  Darling thus

7   fails to state a claim under Section 2911 of the California Civil Code.  Baywood's motion to dismiss

8   the Third Claim for Relief is GRANTED with prejudice as to Darling's quiet title claim seeking to

9   nullify the Memorandum of Agreement pursuant to Section 2911 of the California Civil Code.

10   Baywood's motion to dismiss the Third Claim for Relief does not, however, address Darling's claim

11   to quiet title as to the Purchase Agreement.  That claim remains.

12          4.   <u>Declaratory Relief</u>

13          In its fourth cause of action, Darling asks for declaratory relief to establish that Baywood has

14   no interest in the Darling property.  Darling claims that Baywood has no interest in the property

15   because it failed to timely fund the Second Deposit and because it failed to immediately request the

16   close of escrow after funding the Second Deposit.  *See* Compl. ¶ 40.

17          In its motion to dismiss, Baywood argues that the claim for declaratory relief "impliedly

18   asserts that any suit by Baywood should have been filed four years following the February 16, 2000

19   Second Deposit and is therefore prospectively barred," and that a "statute of limitations may not be

20   used offensively and is only available as a defense to another's suit."  Mot. at 13.

21          In response, Darling asserts that the claim for declaratory relief has nothing to do a statute-

22   of-limitations theory and that the statute of limitations was implicated only in the third cause of

23   action.  According to Darling, "[t]he crux of the Fourth Claim is that, under the terms of the

24   Purchase Agreement, the Purchase Agreement has cancelled *by its own terms* and Baywood has no

25   interest in the Darling Property."  Opp'n at 8 (emphasis added).

26          Darling is correct.  Its allegation that the Purchase Agreement was cancelled by virtue of the

27   failure to fund the Second Deposit within the time frame provided by the Fourteenth Amendment is

28   not based on the statute of limitations.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 3.1, titled

1   "Property Inspection") (providing that Baywood's failure to make the Second Deposit by July 6,

2   1990 would be deemed nonapproval of the property, and "this transaction shall be cancelled");

3   Compl., Ex. 3 (Fourteenth Amendment) (extending time to make Second Deposit to May 1, 1997).

4   It is based on Baywood's failure to perform according to the contract.

5        Similarly, Darling's contention that the Purchase Agreement was cancelled because

6   Baywood did not immediately request the close of escrow after funding the Second Deposit is not

7   dependent upon the statute of limitations.  Under the Agreement, the closing of the transaction

8   between Darling and Baywood would take place "thirty (30) calendar days after the date on which

9   all conditions precedent to the Closing described in Paragraph 6.3, below, may have occurred."

10   Compl., Ex. 1 (Purchase Agreement ¶ 6.1, titled "Closing; Timing").  The conditions precedent

11   listed in Paragraph 6.3 of the Agreement included Baywood's approval of the Darling property after

12   inspection, *see* Compl., Ex. 1 (Purchase Agreement ¶¶ 6.3.1), which would be evidenced by its

13   funding of the Second Deposit.  *See* Compl., Ex. 1 (Purchase Agreement ¶ 3.1, titled "Property

14   Inspection").  Again, the claim is based on Baywood's failure to perform according to the contract.

15        Baywood's motion to dismiss the Fourth Claim for Relief is DENIED.

16   C.   Easement Claims

17        Plaintiff Darling International, Inc. has filed three easement-related claims against Defendant

18   Baywood Partners, Inc., in its fifth, sixth, and seventh causes of action, respectively seeking quiet

19   title for an implied public dedication, quiet title for prescriptive easement, and declaratory relief for

20   an implied easement.  Baywood moves to dismiss these claims based upon Darling's failure to state

21   a claim upon which relief may be granted.

22        1.   Public Dedication

23        In its fifth cause of action, Darling asserts that "Darling, as well as the public, is entitled to a

24   declaration of quiet title in favor of the public that the Casa Grande Road Transect is dedicated to

25   public use for ingress and egress, and for utility access, to properties along the Petaluma River,

26   including the Darling Property."  Compl. ¶ 50.  "Dedication has been defined as an appropriation of

27   land for some public use, made by the fee owner, and accepted by the public."  *Friends of the Trails*

28   *v. Blasius*, 78 Cal. App. 4th 810, 820 (2000).  "A dedication is implied by law when the public use is

United States District Court

For the Northern District of California

1   *adverse* and exceeds the period for prescription," which is five years in an implied dedication claim.

2   *Friends*, 78 Cal. App. 4th at 821 (emphasis in original).  Regarding adversity,

> [w]hat must be shown is that persons used the property believing the
> public had a right to such use.  This public use may not be 'adverse' to
> the interests of the owner in the sense that the word is used in adverse
> possession cases.  If a trial court finds that the public has used land
> without objection or interference for more than five years, it need not
> make a separate finding of 'adversity' to support a decision of implied
> dedication. . . . For a fee owner to negate a finding of intent to dedicate
> based on uninterrupted public use for more than five years, therefore, he
> must either affirmatively prove that he has granted the public a license to
> use his property or demonstrate that he has made a bona fide attempt to
> prevent public use.

9   *Id.* at 821-22 (citing *Gion v. City of Santa Cruz*, 2 Cal. 3d 29, 39-41 (1970), partially superseded by

10   California Civil Code section 1009[5]).

11   Baywood argues that the implied public dedication claim should be dismissed because it has

12   granted express, permissive uses of the Casa Grande Road Transect, including (1) an easement

13   granted to the City of Petaluma in 1992 for access and appurtenant to the Rocky Memorial Dog

14   park, *see* Req. Judicial Notice, Ex. D, and (2) a lease between Baywood and Darling.  *See id.*, Ex. C.

15   Due to the easement, Baywood claims that an implied dedication is not appropriate because "such

16   rights cannot exist where use is permissive as opposed to hostile and adverse."  Mot. at 14 (citing

17   *Aptos Seascape Corp. v. County of Santa Cruz*, 138 Cal. App. 3d 484, 501 (1982)).  Due to the lease,

18   Baywood claims that "[s]ince a landlord has no right to prevent the possession by a third party

19   during the period of a lease, that third party cannot acquire a prescriptive title against the landlord."

20   Mot. at 15 (citing *Dieterich Int'l Truck Sales, Inc. v. J.S. & J Services, Inc.*, 3 Cal. App. 4th 1601,

21   1609-11 (1992)).

22   The Court rejects both of Baywood's argument.  Regarding the permissive use by way of an

23   easement, Darling has alleged a public use of the Casa Grande Road Transect that is greater in scope

24   than that permitted by the easement.  Darling seeks public dedication for "ingress and egress, and for

25   utility access, to properties along the Petaluma River, including the Darling Property," with no

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
         [5] California Civil Code section 1009 does not supersede *Gion v. Santa Cruz* for claims such as
28   this one, where a governmental entity maintained and improved the property at issue.  *See* Compl. ¶ 49
     & Cal. Civ. Code § 1009(d).

limitation.  Compl. ¶ 50.  In contrast, the easement granted by Baywood in 1992 "shall be only for: (i) vehicular ingress and egress of City vehicles on City business during normal business hours from Casa Grande Road to the City Property; and (ii) pedestrian and bicycle ingress and egress for the general public to any bicycle and pedestrian trail system . . . and for no other purpose."  Req. Judicial Notice, Ex. D (Ingress and Egress Easement Agreement ¶ 2.3).  Darling states a valid claim for public dedication by alleging that the public has used the property in a non-permissive manner.

Baywood's second argument that the lease between Baywood and Darling prevents a public dedication claim is not persuasive for two reasons.  First, Baywood relies on *Dieterich Int'l Truck Sales, Inc.*, 3 Cal. App. 4th at 1609-11, where the plaintiff sought a prescriptive easement, not a public dedication.  The court held that no prescriptive easement claim existed because the claim would injure possessory interests, which an out-of-possession landlord could not protect, as opposed to ownership interests, such as waste, which the landlord could protect.  *See id.* at 1610 ("In our view, the inquiry in a case involving unlawful intrusion on property rights should focus upon the nature of the injury and the damages sought: If [on the one hand,] the right to possession has been abridged and possessory rights damaged, the possessor [*i.e.*, the tenant] may complain by way of an action for trespass; if, on the other hand, an intruder harms real property in a manner which damages the ownership interest, the property owner may seek recovery whether the cause of action be technically labeled trespass or some other form of action, such as waste.").  Because a public dedication may impose a considerably greater burden than a private easement against a landlord, it may intrude more substantially upon Baywood's ownership interest which would distinguish this case from *Dieterich*.  *See id.* at 1609-1610.  Moreover, the scope of the public dedication could exceed that of the lease for reasons similar to those discussed above.  Dismissal at this juncture under Rule 12(b)(6) is not appropriate.

Furthermore, the California Court of Appeal has suggested that even if a landlord cannot prevent, as a matter of right, the public from accessing its property through a formal action for trespass, the landlord would still have a practical duty to prevent public access if its tenants would not have objected preventative steps.  *See Friends of the Trails*, 78 Cal. App. 4th at 830.  The Court of Appeal held:

> The Landowners suggest that even if their predecessors would not have been legally barred from preventing trespass, they would have been prevented from such action as a practical matter because they were required to seek permission from NID to erect gates. The Landowners fail to show that their predecessor in interest was legally required to defer to NID in taking reasonable steps to prevent public use of the NID easement, i.e., that NID had a legal right to prevent every reasonable measure which could have been effective to prevent the adverse public user. Indeed, on the practical plane, the Landowners' predecessor in interest presumably could have obtained the same agreement from NID to install the gates in issue before the lapse of the prescriptive period.

*Id.* In effect, the landlord must exercise diligence in seeking to protect its interest. At this pleading stage, the Court cannot conclude that Baywood could not, as a practical matter, prevent the public from accessing its property. For these reasons, the Court denies Baywood's motion to dismiss Darling's claim for an implied public dedication.

2.    <u>Prescriptive Easement Claim</u>

In its sixth cause of action, Darling asserts that it is "entitled to the declaration of a non-exclusive prescriptive easement to run with and benefit the Darling Property, to burden the Baywood Property and the Regan Property, to the physical extent of the Casa Grande Road Transect, for all reasonable purposes." Compl. ¶ 53. "To establish the elements of a prescriptive easement, the claimant must prove use of the property, for the statutory period of five years, which use has been (1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right." *Harrison v. Welch*, 116 Cal. App. 4th 1084, 1089 (2004) (internal quotation marks omitted).

In its motion to dismiss, Baywood argues that Darling has failed to state a prescriptive easement claim for two reasons. First, "as a matter of law, a private party cannot obtain an easement over a railroad right of way." Mot. at 15-16. Second, Darling is time-barred and estopped from denying its landlord's superior title once it entered into a lease in 1960. The Court finds neither of these arguments persuasive.

United States District Court

For the Northern District of California

### a.    Railroad Right of Way

The parties do not dispute that section 1007 of the California Civil Code bars a private party from obtaining a prescriptive easement over a railroad right of way.  *See* Cal. Civ. Code § 1007.[6] Rather, it is Darling's contention that "[o]ne may, however, obtain prescription against a railroad right of way if the right of way has been abandoned," which has been alleged in the complaint. Opp'n at 12 (citing *Machado v. Southern Pacific Transportation Co.*, 233 Cal. App. 3d 347, 362 (1991)).  Darling's complaint states that "[t]he Baywood Property and the Regan Property are a *former* right of way."  Compl. ¶ 45 (emphasis added).  Baywood contends that this is not a sufficient allegation of abandonment.  *See* Reply at 9.  But in a motion to dismiss, all factual allegations should be viewed in the light most favorable to the plaintiff.  *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004).  Moreover, Federal Rule of Civil Procedure 8(a) requires only notice pleading such that Darling need not provide more specific allegations as to how the railroad right of way has been abandoned.

### b.    Temporal Estoppel

Baywood argues that Darling has been effectively dispossessed of any prescriptive easement after it entered into a lease with Northwestern Pacific Railroad Company in 1960 and later with Baywood, for access to the Darling property.  *See* Mot. at 15-16.  Once dispossessed, Darling must have asserted its prescriptive rights within five years, *i.e.*, by August 1965, because as a tenant, Darling is estopped from challenging its landlord's superior title.  *See* Mot. at 16 (citing Cal. Evid. Code § 624 for the proposition that a tenant is estopped from denying the landlord's superior title).

Notwithstanding Baywood's failure to cite authority supporting a five-year limitations period to bring a quiet title action for a prescriptive easement,[7] any statute of limitations is tolled while a

---

[6] California Civil Code section 1007 provides, "no possession by any person, firm or corporation no matter how long continued of any land, water, water right, easement, or other property whatsoever dedicated to a public use by a public utility, or dedicated to or owned by the state or any public entity, shall ever ripen into any title, interest or right against the owner thereof."

[7] Baywood cites section 326 of the California Code of Civil Procedure, which provides a five-year prescriptive period to acquire a prescriptive easement, but does not provide a five-year limitations period to quiet such a title.

United States District Court
For the Northern District of California

claimant remains in exclusive possession of the property, pursuant to *Muktarian v. Barmby*, which held:

> no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property. In many instances one in possession would not know of dormant adverse claims of persons not in possession. Moreover, even if, as here, the party in possession knows of such a potential claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him.

63 Cal. 2d 558, 560-61 (1965) (citations omitted). Per Baywood's contention that "[a] lease grants the tenant exclusive possession and use of real property against all others," Darling is considered to have maintained exclusive possession for the purposes of this motion. Mot. at 15. Accordingly, any statute of limitations has been tolled.

Baywood also argues that Darling cannot bring a prescriptive easement claim because Darling is a tenant of Baywood's, and a "tenant in possession cannot maintain a suit against a landlord to litigate title." Mot. at 16. As a general rule, a tenant is "estopped" from challenging his landlord's title during the tenancy. *See Yuba River Sand Co. v. City of Marysville*, 78 Cal. App. 2d 421, 425-26 (1947); *see also* Cal. Evid. Code § 624 ("A tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation."). But there is an exception to the rule. "[T]here is no estoppel present when the tenant is in possession before the lease is executed." 7 Miller & Starr, Cal. Real Estate § 19:57 (3d ed. 2005). The court in *Tewksbury v. Magraff* provided the policy behind the rule:

> To allow a party to obtain possession by entering under a lease, and then to disclaim, either before or after the expiration of the term, would be to encourage the very fraud and chicanery which the estoppel was designed to prevent. The estoppel rests upon considerations of public policy which, for obvious reasons, would be defeated in its purpose if one who has been put in possession of land by another should be allowed to controvert the title of the latter without first restoring him to as good a condition as he was in before he parted with the possession.

33 Cal. 237, 244-45 (1867). This led the court to find the applicable exception:

> So if the tenant did not take possession under the lease, but was in possession at the time he took his lease, he may dispute the landlord's title without first surrendering the possession; for not having received the possession from him, he is under no moral or legal obligation to restore it before adopting a hostile attitude. . . .

**United States District Court**
For the Northern District of California

1    *Tewksbury*, 33 Cal. at 245; *accord Yuba River Sand Co.*, 78 Cal. App. 2d at 426.

2           Baywood argues that for the exception to apply, Darling's lease must now be expired or

3    terminated.  *See* Reply at 9 (citing *Yuba River Sand Co.*, 78 Cal. App. 2d at 426, indicating the

4    exception applied to "a lease which has expired.").  The court in *Yuba River Sand Co.*, however, did

5    not hold that an expiration was necessary for the exception to apply.  An expired lease was not

6    pivotal to the court's reasoning.  *See Yuba River Sand Co.*, 78 Cal. App. 2d at 426 ("if the tenant did

7    not take possession under the lease, but was in possession at the time he took his lease, he may

8    dispute the landlord's title without first surrendering the possession" (quoting *Tewksbury*, 33 Cal. at

9    245)).  Nor have prior cases and the leading treatises suggested such a requirement.  *See, e.g.,*

10   *Tewksbury*, 33 Cal. at 245; 7 Miller & Starr, Cal. Real Estate § 19:57 (3d ed. 2005); 12 Witkin,

11   Summary of California Law, Ch. XVII Real Prop. § 607, p. 719 (10th ed. 2005).  The Court discerns

12   no logical or policy reason to impose such a requirement.  For the foregoing reasons, the Court

13   denies Baywood's motion to dismiss Darling's claim for a prescriptive easement.

14   3.      Implied Easement Claim

15          In its seventh and last cause of action, Darling seeks a declaratory judgment for an easement

16   by implication across the Baywood and Regan properties to the Darling property.  *See* Compl. ¶ 56.

17   "An easement by implication requires the following conditions: 1. There must be a common

18   ownership of a parcel and a transfer or conveyance of one parcel, or a portion of a parcel, to another.

19   2. Prior to the division of title, there must have been an existing obvious, and apparently permanent,

20   use of the quasi-easement by the common owner.  3. The easement must be reasonably necessary to

21   the use and benefit of the quasi-dominant tenement." *Moores v. Walsh*, 38 Cal. App. 4th 1046, 1049

22   (1995) (internal quotation marks omitted).

23          In its motion to dismiss, Baywood argues that Darling has failed to state a claim for an

24   easement by implication because Darling did not adequately allege in its complaint (1) pre-existing

25   use consistent with the easement claimed and (2) common prior ownership.  According to Baywood,

26   Darling's allegations based on "information and belief" are not sufficient: "At a minimum, Darling

27   must identify the common grantor and preexisting use so that Baywood can investigate the

28   allegations and respond appropriately." Mot. at 17.

1    The Court rejects Baywood's contention.  An allegation based on information and belief is

2    adequate.  As noted by the Moore's treatise:

3    > Rule 8 does not expressly permit statements supporting claims for
     > relief to be made on information and belief.  However, Rule 11 permits
4    > a pleader, after reasonable inquiry, to set forth allegations that "are
     > likely to have evidentiary support after a reasonable opportunity for
5    > further investigation or discovery."  Courts have read the policy
     > underlying Rule 8, together with Rule 11, to permit claimants to aver
6    > facts that they believe to be true, but that lack evidentiary support at
     > the time of pleading.  Generally, however, such averments are allowed
7    > only when the facts that would support the allegations are within the
     > defendant's knowledge or control.

8

9    2-8 Moore's Fed. Prac. -- Civ. § 8.04[4].

10   Likewise, the Court rejects Baywood's argument that Darling failed to adequately plead

11   common prior ownership.  In its complaint, Darling specifically alleges that the Baywood, Regan,

12   and Darling properties were once commonly owned.  *See* Compl. ¶ 55.  Darling need not identify

13   who the common owner was, because as noted above, all that Rule 8 requires is notice pleading.  *See*

14   Fed. R. Civ. P. 8(a).

15   Finally, the Court rejects Baywood's argument that there is not an adequate allegation of pre-

16   existing use.  Darling asserts that the public must use and, in fact, has used the Casa Grande Road

17   Transect to access the Darling property.  *See* Opp'n at 14 (citing Compl. ¶ 47).  Construing this

18   allegation in Darling's favor, as the Court must on a motion to dismiss, *see Edwards*, 356 F.3d at

19   1061, the Court denies Baywood's motion to dismiss Darling's implied easement claim.

### IV.   CONCLUSION

21   For the foregoing reasons, the Court grants Baywood's motion to dismiss Darling's First,

22   Second, and Third Claims for Relief with prejudice.  The Court denies Baywood's motion to dismiss

23   the Fourth, Fifth, Sixth and Seventh Claims for Relief.  This order does not preclude Darling from

24   asserting other grounds for relief not inconsistent with this order.

25   ///

26   ///

27   ///

28   ///

1     The Court grants Baywood's Request for Judicial Notice as to the public records submitted

2 as Exhibits A through J to that Request.  The Court denies Baywood's motion for a more definite

3 statement.

4     This order disposes of Docket Numbers 11 and 15.

5

6     IT IS SO ORDERED.

7

8 Dated:  December 21, 2005

9                                                    _____
                                                     EDWARD M. CHEN
10                                                   United States Magistrate Judge

11

**United States District Court**
For the Northern District of California