UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLING INTERNATIONAL, INC., *et al.*, | No. C-05-3758 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE; AND FINDING MOOT PLAINTIFF'S OBJECTIONS AND MOTION TO STRIKE** |
| BAYWOOD PARTNERS, INC., *et al.*, | |
| Defendants. | |
| | **(Docket Nos. 64, 67, 74, and 90)** |

_____/

Plaintiff Darling International, Inc. ("Darling") and Defendant Baywood Partners, Inc. have filed cross-motions for partial summary judgment.

In its motion, Darling asks that the Court declare that the 1990 Purchase Agreement between the parties terminated by its own terms on May 31, 1997, and order that the Memorandum of Agreement which memorialized the Purchase Agreement be cancelled. Darling further asks the Court to grant Darling partial summary judgment on Baywood's counterclaims for specific performance, breach of contract, and declaratory relief because they are all "premised on the continuing validity of the Purchase Agreement." Pl.'s Mot. at 1.

In turn, in its motion, Baywood asks that the Court grant Baywood partial summary judgment on Darling's claim for declaratory relief. Baywood's motion is based on its fourteenth

1  affirmative defense -- *i.e.*, that Darling waived and is equitably estopped from claiming that the
2  Purchase Agreement terminated.¹

3  Having considered the parties' briefs and accompanying submissions, as well as the
4  argument of counsel, the Court hereby DENIES both parties' motions for partial summary judgment.

**I.  DISCUSSION**

A.  Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, it may prevail on a motion for summary judgment only if it affirmatively demonstrates that there is no genuine dispute as to every essential element of its claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992).

In contrast, where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing

---

¹ In response to an argument raised in Darling's opposition to Baywood's motion, Baywood claims that the Court should also declare the Purchase Agreement to be valid and in force because its "motion is based on its Fourteenth Affirmative Defense *and* Darling's conduct after accepting the Second Deposit." Def.'s Reply at 14 (citing Mot. at 1). The Court rejects Baywood's attempt to expand its motion for partial summary judgment. Its opening brief specifically states that it "is based on its fourteenth affirmative defense, which alleges that Darling waived these contentions and is estopped from asserting them *because* it accepted the tender of the Second Deposit, and thereafter conducted itself in a manner consistent with the Contract's continued vitality." Mot. at 1 (emphasis added).

United States District Court
For the Northern District of California

sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Of course, if the defendant is moving for summary judgment based on an affirmative defense for which it has the burden of proof, the defendant "must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in [its] favor." *Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (internal quotation marks omitted; emphasis in original); *see also Kinghorn v. Citibank, N.A.*, No. C 97-3111 FMS, 1999 U.S. Dist. LEXIS 442, at *7-8 (N.D. Cal. Jan. 20, 1999) (noting same).

B.  Darling's Claims for Declaratory Relief and Cancellation

In its motion for partial summary judgment, Darling asks that the Court declare that the Purchase Agreement between the parties terminated by its own terms on May 31, 1997, and order that the Memorandum of Agreement which memorialized the Purchase Agreement be cancelled. Summary judgment should be denied so long as there is a genuine dispute as to whether the Purchase Agreement did in fact terminate on May 31, 1997.

Baywood argues that there is a genuine dispute in two ways: (1) the Purchase Agreement was ambiguous as to whether it would automatically terminate if the Second Deposit was not made or whether it would not terminate until the party seeking cancellation of the contract actually cancelled the contract ("presumably, notice of cancellation by letter") and instructed the Escrow Holder to return the initial deposit to Baywood, Def.'s Opp'n at 5; and (2) the Purchase Agreement could not terminate based on Baywood's failure to make the Second Deposit because Darling did not satisfy a condition precedent (or concurrent) to Baywood's making the Second Deposit -- *i.e.*, Darling failed to provide documents regarding the physical condition of the property as required by Paragraph 3.4 of the Purchase Agreement and failed to provide the Tank Report as required by the First through Fourteenth Amendments. Baywood further argues that there is a genuine dispute as to contract termination on May 31, 1997, because of evidence demonstrating waiver by Darling and estoppel. The waiver and estoppel arguments are addressed in Part I.D, *infra* (discussing summary judgment on these affirmative defenses).

1 Baywood's first argument -- *i.e.*, that the Purchase Agreement was ambiguous as to whether
2 it would automatically terminate -- is not persuasive. "Whether a contract provision is ambiguous is
3 a question of law." *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 898 (9th Cir. 1993). Here, the
4 Purchase Agreement provides that, if the Second Deposit is not made by a certain date, "then this
5 transaction shall be cancelled, and on the day after the failure of condition, the Escrow Holder shall
6 return to [Baywood] the Initial Deposit, together with all interest earned thereon." Purchase
7 Agreement ¶ 3.1 (titled "Property Inspection"). Baywood has not offered any extrinsic evidence to
8 show that this language is reasonably susceptible to the interpretation it advocates -- *i.e.*, that a party
9 must affirmatively cancel the contract and notify the escrow holder to return the initial deposit. *See*
10 *Dore v. Arnold Worldwide, Inc.*, No. S124494, 2006 Cal. LEXIS 9288, at *12 (Aug. 3, 2006)
11 (stating that "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be
12 exposed by extrinsic evidence which reveals more than one possible meaning to which the language
13 of the contract is yet reasonably susceptible") (internal quotation marks omitted); *Wolf v. Superior*
14 *Court*, 114 Cal. App. 4th 1343, 1351 (2004) (noting that the first step in contract interpretation is for
15 a court to "provisionally receive[] (without actually admitting) all credible evidence concerning the
16 parties' intentions to determine ambiguity, *i.e.*, whether the language is reasonably susceptible to the
17 interpretation urged by a party"). Therefore, the Court is left with the language of the Purchase
18 Agreement alone in deciding whether the above provision is ambiguous.

19 Based on the language, the provision is unambiguous. If the Second Deposit is not timely
20 made, then the contract terminates and the escrow holder returns the initial deposit to Baywood.
21 Contrary to what Baywood argues, nothing in the language of the provision "suggests" that the
22 contract will not terminate absent a party's affirmative cancellation of the contract and affirmative
23 instruction to the escrow holder to return funds. Def.'s Opp'n at 5. If that was what the parties
24 intended, the contract could easily have been worded differently. Rather, the termination provision
25 of Paragraph 3.1 is self-executing. *See also* Purchase Agreement ¶ 6.4 ("In the event any condition
26 set forth in Paragraph 6.3 above, shall not be satisfied or waived, then this Agreement shall
27 terminate . . . ."); *id.* ¶ 6.3.1 ("Purchaser must have approved the Subject Property in the manner
28 described in Paragraph 3.1.").

4

That being said, even though the Purchase Agreement did contain an automatic termination provision, that does not mean summary judgment in favor of Darling is warranted. As Baywood argues, there is a genuine dispute about whether Darling had to give Baywood the Tank Report before the Second Deposit would be due. The various Amendments suggest that the parties contemplated that Baywood would make a decision about the Second Deposit after having a chance to inspect the property and that Baywood would have the benefit of the Tank Report as part of its inspection of the property. In other words, arguably, Darling's obligation to provide a copy of the Tank Report (and perhaps other documents) was a condition concurrent with Baywood's obligation to inspect and approve the property. *See* Cal. Civ. Code § 1439 ("Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party . . . ."); *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969) ("As applied to a contract for the sale of real estate calling for concurrent performance, neither party can place the other in default unless he is fully able to perform or make a tender of the promised performance.").

For example, the Second Amendment (which is representative of all fourteen Amendments) states:

> 2. <u>Extension of Property Inspection Period</u>: Pursuant to the terms of Paragraph 4.4.1 of the Agreement [titled "Tank Report"], Seller is required to authorize EEI to finalize the Tank Report. Seller has authorized EEI to finalize the Report but has discovered that the Tank Report will take longer than Seller anticipated for EEI to generate the Tank Report. *In recognition thereof, Seller and Purchaser extended the Property Inspection in the Manner described in the First Amendment.* As of the date of execution by this Second Amendment, the Tank Report is not complete.
>
> *In light of the foregoing and in order to afford Purchaser the opportunity to inspect the . . . Property in the manner originally contemplated by the Agreement* and the First Amendment and to preserve otherwise the benefits to Seller of the Agreement and the First Amendment, Seller and Purchaser agree to extend the time period for inspection of the . . . Property in the manner described in Paragraph 3.1 of the Agreement [titled "Property Inspection"] as amended by Paragraph 3 of the First Amendment from September 15, 1990 to November 15, 1990. If Purchaser should approve of the . . .

> Property, the date Purchaser must make the Second Deposit shall similarly be extended from September 15, 1990 to November 15, 1990.

Pl.'s Ex. 41 (Second Amendment) (emphasis added). The fact that the parties extended the time within which Baywood was required to make the Second Deposit fourteen times because the Tank Report had not been completed further suggests the parties considered these obligations concurrent and dependent.

Baywood argues that in addition to the Tank Report referenced in the Fourteenth Amendment, Darling also had to provide other documents regarding the physical condition of the property -- including the environmental condition -- before the Second Deposit would be due. Baywood points out that, under Paragraph 3.4 of the Purchase Agreement, within thirty days of the execution of the contract -- *i.e.*, by May 30, 1990 -- Darling was required to deliver to Baywood "complete and accurate copies of all reports, studies and other documentation in [Darling's] possession or subject to [its] control concerning [*inter alia*] (i) the physical condition of the . . . Property; . . . and (v) the presence of Hazardous Materials on the . . . Property." Purchase Agreement ¶ 3.4 (titled "Document Delivery"). In turn, by July 6, 1990 -- *i.e.*, a month later -- Baywood had to inspect the property and approve, *inter alia*, its physical condition and "any and all other aspects . . . which [Baywood] deem[ed] to be material." *Id.* ¶ 3.1 (titled "Property Inspection").

Given these contract provisions, including the fourteen amendments, it is plausible that the conditions might be found concurrent, *i.e.*, before Baywood had to make the Second Deposit, Darling had to turn over certain documents including the Tank Report to enable Baywood to inspect the property and decide whether to make the Second Deposit. So construed, if Darling failed to turn over the documents, then Baywood's performance of funding the Second Deposit was not yet due.

Baywood has submitted evidence that Darling did not turn over the necessary documents. *See* Wasem Decl. ¶ 14 (stating that "Darling did not provide Baywood with any written documentation of Darling's remediation efforts during this time [*i.e.*, between 1991 and 1997]"). And, according to Mr. Wasem, Baywood never received a copy of the Tank Report. *See* Wasem

6

1  Decl. ¶ 18 ("The information did not include the Tank Report, which to date I have never
2  received.").[2]

3  Darling argues that Paragraphs 3.1 and 3.4 were not expressly linked in the Purchase
4  Agreement. The Court acknowledges such and moreover notes that the timing of the Second
5  Deposit was not expressly linked to the provision of documentation even though the contract could
6  have been so drafted. Nonetheless, at the very least the contract is ambiguous as to whether these
7  provisions were implicitly linked and constituted concurrent conditions. If a contract provision is
8  ambiguous, "ordinarily summary judgment is improper because differing views of the intent of
9  parties will raise genuine issues of material fact." *Maffei*, 12 F.3d at 898. Such is the case here.

10  Finally, although neither party moved on an implied-in-fact contract claim (based on the
11  theory that, even if the original contract terminated in 1997, it was revived and reinstated by the
12  parties' subsequent conduct) and thus the Court will make no ruling at this point on such a claim, the
13  Court notes that the subsequent conduct of the parties may be considered as evidence of the parties'
14  understanding that the contract did or did not terminate on its own accord in 1997. In this regard, as
15  discussed below in the context of waiver and estoppel, the conflicting evidence further substantiates
16  there are genuine issues of fact as to whether the contract terminated in 1997.[3]

---

[2] Darling has objected to other portions of ¶ 18, but not this portion.

[3] The Court notes that Baywood has presented evidence on Darling's state of mind as to the continuing existence of the contract. Most notably, in a document dated August 31, 2002, and titled "Estimate on Property Reserves," Darling characterized the contract as being alive and well, stating that the property is "*[c]urrently* under contract for sale dated 1990." Def.'s Rule 56(f) Decl., Ex. B (emphasis added). Darling contends that this document is not admissible evidence because "an accounting reserve 'is neither an admission of liability nor evidence of the validity of the claim.'" Pl.'s Reply at 4 (quoting *California Viking Sprinkler Co. v. Pacific Indem. Co.*, 213 Cal. App. 2d 844, 853 (1963)). This argument is not persuasive. First, as a factual matter, *California Viking* is distinguishable, involving the establishment of a reserve by an insurance company on a potential liability. *See California Viking*, 213 Cal. App. 2d at 852-53. Second, and more important, the case only states that the "establishment of a reserve . . . is neither an admission of liability nor evidence of the validity of [a] claim." *Id.* at 853 (also referring to "[t]he existence of a potential claim"). Baywood is not using the establishment or existence of Darling's reserve as evidence; rather, Baywood is relying on Darling's *characterization* of the reserve, characterization which is probative to intent. However, while perhaps probative, this evidence is not dispositive. For the reasons stated herein, there is substantial conflicting evidence of what the parties conduct and understandings were post-1997.

United States District Court
For the Northern District of California

C. <u>Baywood's Counterclaims for Specific Performance, Breach of Contract, and Declaratory Relief</u>

Darling moves not only for partial summary judgment on its causes of action but also for partial summary judgment on Baywood's causes of action. Baywood has asserted claims for (1) specific performance, (2) breach of contract, and (3) declaratory relief, *i.e.*, a declaration that the Purchase Agreement is valid and binding and that Darling waived the argument or is estopped from arguing that the contract is not enforceable. For Baywood to prevail on the claims for specific performance and breach of contract, it must show that the Purchase Agreement is still in existence. For Baywood to prevail on the claim for declaratory relief, it must show either that the contract is still in existence *or* that waiver or estoppel is applicable. The waiver and estoppel arguments are addressed in Part I.D, *infra* (discussing summary judgment on these affirmative defenses). This section focuses on the issue of whether there is a genuine dispute of material fact as to whether the Purchase Agreement is still in existence, *i.e.*, that it did not terminate on May 31, 1997.

For the same reasons discussed above, there is a genuine dispute that the Purchase Agreement is still in existence.

Darling further argues that, at the very least, it should be granted summary judgment on the specific performance claim because that claim is barred by the statute of limitations. According to Darling, the statute of limitations began to run as of May 1, 1997, *i.e.*, the day that Mr. Mellina informed Mr. Wasem by letter that Darling had performed its remediation obligations under the Purchase Agreement and would not further extend the time for the property inspection. Darling argues that, "if Baywood believed that the Agreement was ongoing and that Darling was not fulfilling its obligations thereunder, it was on notice as of May 1, 1997, when Darling took the position that it had fulfilled its obligations under the Agreement." Pl.'s Mot. at 18. In response, Baywood contends that its "claim for specific performance did not accrue until October 1, 2004," when Mr. Whiting sent his letter to Mr. Wasem, which stated that "Darling considers the 1990 [Purchase] Agreement to be terminated." Pl.'s Ex. 163; *see also* Def.'s Opp'n at 22. Baywood also argues that "Darling is estopped to assert the statute of limitations for the same reasons it is estopped to assert that the contract terminated." *Id.*

8

1    As a preliminary matter, the Court notes that, although Baywood has asserted specific
2 performance as a claim for relief, specific performance is actually "a *remedy* for breach of contract,
3 a cause of action which requires proof the contract was breached." *Golden West Baseball Co. v.*
4 *City of Anaheim*, 25 Cal. App. 4th 11, 49 (1994) (emphasis in original). Under state law, "[t]he
5 general rule is that a cause of action for breach of contract accrues at the time of breach." *Whorton*
6 *v. Dillingham*, 202 Cal. App. 3d 447, 456 (1988); *see also* 3 Witkin Cal. Proc. Actions § 459 ("The
7 cause of action ordinarily accrues when, under the substantive law, the wrongful act is done and *the*
8 *obligation or liability arises*, i.e., when a suit may be brought.") (emphasis in original). Therefore,
9 the question in the instant case is when Darling allegedly breached the contract.[4]

10   Contrary to what Darling argues, the breach of which Baywood complains is Darling's
11 refusal to sell the property at issue to Baywood, not any failure by Darling to satisfy its remediation
12 obligations. Accordingly, there is a genuine dispute of material fact as to when Darling allegedly
13 breached the contract. A reasonable fact finder could find that, given Mr. Mellina's letter of May 1,
14 1997, Darling would not sell the property if the Second Deposit was not funded by May 31, 1997.
15 Even if a reasonable fact finder were not persuaded by this letter alone, a reasonable fact finder
16 could still find that Darling repudiated the contract much earlier than October 1, 2004, based on,
17 *e.g.*, the letter from Mr. Mellina, dated February 4, 1998, which stated that certain environmental
18 reports were being provided to Baywood "solely as a courtesy to facilitate possible continuing
19 discussions concerning the potential sale of the Property to Baywood Partners, Inc. This delivery
20 shall not imply any acknowledgment of continuing obligations on the part of Darling under that
21 certain Agreement of Purchase and Sale dated April 30, 1990, between Darling and Baywood
22 Partners, Inc." Pl.'s Ex. 94. On the other hand, a reasonable fact finder could also conclude that, in
23 spite of both Mellina letters, Darling was not unwilling to sell the property to Baywood after May

---

[4] *Cf. Spear v. California State Automoblie Assn.*, 2 Cal. 4th 1035, 1042 (1992) ("[A]n action to compel arbitration is in essence a suit to compel specific performance of a contractual term, *i.e.*, the arbitration agreement. A contract cause of action does not accrue until the contract has been breached. While the parties subject to an arbitration condition are negotiating in good faith before submitting to arbitration, or are delaying negotiation and arbitration by mutual aagreement, there is no breach of the contract. Rather, the contract is breached only when one party refuses to submit to arbitration. It is at that time that the cause of action accrues.").

9

31, 1997, because, *inter alia*, Darling never explicitly repudiated the contract thereafter and its conduct after May 31, 1997, suggested the parties were operating under the contract. The conflicting evidence on these matters is discussed in greater detail below.

Moreover, even if the alleged breach by Darling on its purported failure to provide environmental documentation were relevant, Baywood contends that it waived that breach. Specifically, Baywood asserts that,

> [e]ven if Darling's failure to provide information about the environmental condition of the Property between 1997 and 2000 were construed as a breach of contract, Baywood waived that breach when it made the Second Deposit in February 2000, before the four-year statute in C.C.P. § 337(a) expired, and starting a new limitations period in which no further beach by Darling occurred until October 1, 2004.

Def.'s Opp'n at 22. Baywood's position that a party can waive a breach by the other party -- in which case the statute of limitations does not begin to run because of that breach -- is supported by case law. *See, e.g.*, *Romano v. Rockwell Internat'l, Inc.*, 14 Cal. 4th 479, 489 (1996) ("[W]hen there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract."); *McMillan Process Co. v. Brown*, 33 Cal. App. 2d 279, 285 (1939) ("'The plaintiff was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election still to rely upon it. The statute could not begin to run until he made his election to rely no longer upon the contract. . . .'"); *see also* BAJI 10.88 ("Instead of treating a breach as a termination of the contract, the injured party may waive the breach, by electing to treat the contract as still alive, and remaining ready and able to perform on [his] [or] [her] own part, thereby limiting the claim to damages caused by the breach. A waiver may be [express] [or] [implied]. [It is implied when the injured party continues to perform, with knowledge of the other's breach and accepts further performance from the breaching party following the breach.]"). Darling argues that *Romano* is factually distinguishable but Darling fails to address the broader issue of waiver of breach, which is permissible under state law.

Finally, Baywood argues that Darling should be estopped from asserting a statute-of-limitations defense. *See Salmons v. Jameson*, 144 Cal. App. 2d 699, 705 (1956) ("[I]t is well settled

that a person by his conduct may be estopped to rely upon these defenses (of laches or the statute of limitations) and that where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense."). The facts which comprise this estoppel argument largely overlaps with Baywood's argument that Darling waived or is estopped to assert the breach and termination by Baywood in 1997. As discussed below, the material facts regarding waiver and estoppel are in dispute.

D.     Baywood's Affirmative Defenses of Waiver and Estoppel

Baywood asserts that it should be granted partial summary judgment on Darling's claim for declaratory relief based on Baywood's affirmative defenses of waiver and estoppel. Darling argues that it, and not Baywood, should be granted partial summary judgment with respect to the two affirmative defenses.

1.     Waiver

Baywood's first affirmative defense is that Darling has waived any claim that the Purchase Agreement terminated by accepting the Second Deposit in February 2000. A waiver is an intentional relinquishment of a known right, *see Ghirardo v. Antonioli*, 14 Cal. 4th 39, 49 (1996), or "the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Rheem Mfg. Co. v. United States*, 57 Cal. 2d 621, 626 (1962); *see also Noel v. Dumont Builders, Inc.*, 178 Cal. App. 2d 691, 696-97 (1960) (noting same). "The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.'" *City of Ukiah v. Fones*, 64 Cal. 2d 104, 107-08 (1966).

The Court concludes that there is a genuine dispute of material fact as to whether there was a waiver by Darling, thus making both parties' motions for partial summary judgment on this ground inappropriate. In other words, there are both facts that favor Baywood and facts that favor Darling such that a reasonable fact finder could find in favor of either party with respect to waiver.

Facts that favor Baywood include the following:

11

1  ▸ Darling failed to inform Baywood after May 31, 1997, that Darling believed the contract to
2     be terminated.
3  ▸ Darling failed to respond to Mr. Wasem's letter of March 17, 1998, which stated that
4     "Baywood is ready, willing and able to proceed to close the transaction under the terms of
5     the Agreement."  Def.'s Ex. 200.
6  ▸ At a site visit in March 1998, Mr. Demorest and Mr. Phillips discussed the contract with Mr.
7     Wasem but failed to tell him that it had terminated.  *See* Wasem Decl. ¶ 17.
8  ▸ After Baywood funded the Second Deposit on February 16, 2000, Darling failed to tell
9     Baywood that the contract had terminated.[5]
10 ▸ An e-mail from Mr. Demorest to Mr. Wasem in June 2000 suggested that the parties were
11    still operating under the contract.  *See* Def.'s Ex. 195.
12 ▸ Darling failed to respond to an e-mail that Mr. Wasem sent to Mr. Phillips on November 28,
13    2000 (Mr. Demorest was carbon copied), in which Mr. Wasem claimed Mr. Philips had
14    "assured [him] that Darling intends to honor its Agreement of Purchase and Sale with
15    Baywood Partners and does intend to sell the Property to Baywood Partners pursuant to the
16    terms of that Agreement."  Def.'s Ex. 197.
17 ▸ Darling failed to respond to Mr. Wasem's letter of March 30, 2001, which stated once again
18    that "Baywood stands ready, willing and able to close the transaction pursuant to the terms of
19    the Agreement."  Def.'s Ex. 203.
20 ▸ Darling acquiesced to Mr. Wasem's work on the Title Settlement Agreement with the
21    California State Lands Commission.
22 ▸ Darling's annual reports from 2001 to 2005 reflect that the property was an asset held for
23    sale at $497,000 (*i.e.*, consistent with the $500,000 purchase price in the contract less costs to
24    sell).  *See, e.g.*, Def.'s Ex. 259; Def.'s Req. for Judicial Not., Exs. A-F.

---

[5] This fact is relevant regardless of whether there is a duty to speak.  Even assuming arguendo there were no such legal duty under the circumstances, it may be argued that one would expect a party to say something in the face of the Second Deposit and Baywood's assertion that the contract still existed.

12

1  ▸ Darling's "Estimate on Property Reserves," dated August 31, 2002, states that the property at
2     issue is "*[c]urrently* under contract for sale dated 1990." Def.'s Rule 56(f) Decl., Ex. B
3     (emphasis added).
4  ▸ Clifford Kendall, the Chief Building Official of the Petaluma Community Development
5     Department, submitted a declaration, stating that, during a site visit with Mr. McMurtry, Mr.
6     McMurtry indicated that "Darling was currently in contract to sell the Property and that it
7     was the buyer's responsibility to demolish the structures [as required by the city], and he
8     requested that I defer any action related to the Property until the pending transaction
9     closed."[6] Kendall Decl. ¶ 4.
10    Facts that favor Darling include the following:
11 ▸ Mr. Mellina's letter of May 1, 1997, stated that Darling would give Baywood until only May
12    31, 1997, to do the property inspection. "According to my reading of the Agreement, at the
13    expiration of the inspection period, Baywood would be required to deposit the second deposit
14    of $150,000 and would be required to pay the balance of the purchase price and close the
15    transaction within 30 days thereafter." Pl.'s Ex. 88.
16 ▸ Baywood repeatedly asked Darling to sign a Fifteenth Amendment to the Purchase
17    Agreement but Darling never did. *See id.* Ex. 87 (letter from L. Wasem to D. Mellina, dated
18    4/22/97) (proposed amendment extending time for property inspection by one year; also
19    approving a proposed Title Settlement Agreement with the California State Lands
20    Commission); *id.* Ex. 89 (letter from L. Wassem to D. Mellina, dated 5/1/97) (proposed
21    amendment extending time for property inspection by ninety days); *id.* Ex. 90 (proposed
22    amendment extending time for property inspection by approximately two and a half years;
23    also approving a proposed Title Settlement Agreement with the California State Lands
24    Commission); *id.* Ex. 93 (letter from L. Wasem to B. Phillips, dated 9/29/97) (referring to

---

[6] Although Darling has provided a supplemental declaration from Mr. Kendall, that declaration does not completely recant the prior declaration. Instead, Mr. Kendall simply distances himself from the prior declaration. *See* Supp. Kendall Decl. ¶¶ 4-5 (stating that he does not recall Mr. McMurtry using the phrases "currently in contract to sell" or "until the pending transaction closed" or referring to the existence or validity of a specific contract or agreement with a buyer). In any event, credibility is not to be judged at the summary judgment stage.

letter of 4/22/97 which asked that proposed amendment be signed); *id.* Ex. 104 (letter from L. Wasem to B. Phillips, dated 2/9/98) (proposed amendment extending time for property extension by a year); *id.* Ex. 106 (proposed amendment extending time for property extension by a year; also approving a proposed Title Settlement Agreement with the California State Lands Commission); *id.* Ex. 98 (letter from L. Wasem to J. Demorest, dated 3/17/98) (asking once again that proposed amendment be signed); *id.* Ex. 103 (e-mail from L. Wasem to B. Phillips, dated 11/5/98) (asking "what is happening with the extension of our contract"); *id.* Ex. 109 (letter from L. Wasem to B. Phillips, dated 6/16/99) (proposed amendment extending time for property extension by approximately two and a half years); *id.* Ex. 158 (letter from L. Wasem to B. Phillips, dated 4/12/04) (proposed amendment stating that Second Deposit was timely funded; also eliminating Darling's hazardous materials indemnity and lowering purchase price of property from $500,000 to $300,000); *id.* Ex. 161 (proposed amendment stating that Second Deposit was timely funded; also eliminating Darling's hazardous materials indemnity and lowering purchase price of property from $500,000 to $300,000).

- Mr. Mellina's letter of February 4, 1998, stated that certain environmental reports were being provided to Baywood "solely as a courtesy to facilitate possible continuing discussions concerning the potential sale of the Property to Baywood Partners, Inc. This delivery shall not imply any acknowledgment of continuing obligations on the part of Darling under that certain Agreement of Purchase and Sale dated April 30, 1990, between Darling and Baywood Partners, Inc." Pl.'s Ex. 94.
- Mr. Demorest testified that, although he could not recall the specific conversations he had with Mr. Wasem and others at Baywood, the "tenor" of those conversations was that Darling and Baywood were no longer operating under the contract. *See* Miller Decl. ISO Def.'s Mot., Ex. D (Demorest Depo. 12-17).

2.  Estoppel

Baywood's second affirmative defense is that Darling is estopped from claiming that the Purchase Agreement terminated.

14

Under California law, the elements of equitable estoppel are:

> (1) the party to be estopped must be apprised of the facts; (2) [the party to be estopped] must intend that his conduct shall be relied upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the [party asserting estoppel] must be ignorant of the true state of facts; and (4) [the party asserting estoppel] must rely upon the conduct to his injury.

*Granite States Ins. Co. v. Smart Modular Techs.*, 76 F.3d 1023, 1028 (9th Cir. 1996). The parties agree that the burden of proof with respect to estoppel is a preponderance of the evidence.

As above, there is a genuine dispute of material fact, which precludes partial summary judgment in favor of either party. For example, partial summary judgment in favor of Baywood is unwarranted because there is a genuine dispute as to whether Baywood was indeed ignorant of the true state of facts -- *i.e.*, of Darling's position that the contract terminated on May 31, 1997. According to Baywood, it "did not know of Darling's position on contract termination until it received Whiting's *October 1, 2004* letter." Def.'s Mot. at 24 (emphasis in original). Some of Darling's conduct support such an assertion. On the other hand, a reasonable fact finder could also conclude that Baywood did know of the true state of facts based on the Mellina letter of May 1, 1997. Moreover, even if this letter did not make clear Darling's position on contract termination, a reasonable fact finder could conclude that Baywood knew of the true state of facts with the subsequent letter from Mr. Mellina, dated February 4, 1998.

As for Darling's motion for partial summary judgment, there is a genuine dispute as to whether Darling acted as if the Purchase Agreement was still in existence thereby inducing Baywood's reliance. For example, in spite of the two Mellina letters described above, Darling subsequently remained silent in the face of repeated affirmations of the contract by Baywood. Also, Darling never told Baywood that the contract terminated before or after Baywood funded the Second Deposit. Similarly, Darling did not respond to an e-mail that Mr. Wasem sent to Mr. Phillips, in which Mr. Wasem claimed Mr. Philips had "assured [him] that Darling intends to honor its Agreement of Purchase and Sale with Baywood Partners and does intend to sell the Property to Baywood Partners pursuant to the terms of that Agreement." Def.'s Ex. 197. For similar reasons, there are genuine issues of fact as to whether any such reliance was reasonable.

E.  Miscellany

   1.  Baywood's Request for Judicial Notice

Baywood has filed a request for judicial notice. *See* Docket No. 74. The documents at issue consist of (1) Darling's 10-K and 10-Q reports filed with the SEC and (2) Statement of Financial Accounting Standards No. 144, which is issued by Financial Accounting Standards Board. Darling has not opposed the request for judicial notice.

The Court grants the request to the extent it is "compatible with Federal Rule of Evidence 201 and do[es] not require the acceptance of facts 'subject to reasonable dispute.'" *Cal. ex rel. RoNo, L.L.C. v. Altus Fin. S.A.*, 344 F.3d 920, 931 n.8 (9th Cir. 2003); *see also United States v. Southern Cal. Edison Co.*, 300 F. Supp. 964, 975 (E.D. Cal. 2004) ("[D]ocuments are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean. 'Judicial notice is taken of the existence and authenticity of the public and quasi public documents listed. To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice.'").

   2.  Darling's Objections to Baywood's Evidence and Motion to Strike

Darling's objections to certain of Baywood's evidence and motion to strike are moot as the Court has not relied on any of the evidence objected to in ruling on these motions.

   3.  Baywood's Rule 56(f) Request

Pursuant to Rule 56(f), Baywood has asked the Court to deny Darling's motion for partial summary judgment "[b]ased upon Darling's failure to timely produce documents [*i.e.*, financial documents and a note written by Mr. Demorest]." Rule 56(f) Decl. ¶ 9. The request is moot given that Darling's motion should be denied for the reasons stated above.

Baywood, however, also "requests that the Court grant Baywood the opportunity to reopen the depositions of Messrs. Phillips, McMurtry and Demorest, (and, if necessary, the deposition of the person most knowledgeable regarding Exhibits 'A' and 'B'), and to follow-up on written accounting and financial discovery related to these documents, to enable Baywood to present further evidence of Darling's ongoing plan to sell the Petaluma property to Baywood per the terms of the

16

1  Contract." Rule 56(f) Decl. ¶ 9. The Court does not rule on this request as it was not made in a
2  properly noticed motion but rather as part of a declaration. However, the Court did note at the
3  hearing that as to additional discovery, the parties should meet and confer and resolve their
4  differences. The Court provided guidance by indicating it is inclined to permit each party the full
5  extent of discovery set forth in the Court's previous CMC order and allow the parties a reasonable
6  amount of time beyond the previously imposed deadline to do so. Finally, the Court invited the
7  parties to fully engage in the impending settlement conference before Magistrate Judge Larson in
8  view of the significant risk of trial evident herein.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part each party's motion for partial summary judgment; grants Baywood's request for judicial notice; and finds moot Darling's objections and motion to strike.

This order disposes of Docket Nos. 64, 67, 74, and 90.

IT IS SO ORDERED.

Dated: August 16, 2006

EDWARD M. CHEN
United States Magistrate Judge