UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLING INTERNATIONAL, INC., | No. C-05-3758 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO ALTER JUDGMENT OR, ALTERNATIVELY, FOR NEW TRIAL; AND DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT ON PARTIAL FINDINGS** |
| BAYWOOD PARTNERS, INC., *et al.*, | |
| Defendants. | |
| _____/ | **(Docket Nos 211, 214)** |

Currently pending before the Court are two post-trial motions filed by Plaintiff Darling International, Inc. In its renewed motion for judgment on partial findings, Darling argues that judgment should be entered in its favor Defendant Baywood Partner, Inc.'s claims are barred by the statute of limitations. In its motion to alter judgment or for a new trial, Darling's main arguments are that it is entitled to relief because Baywood's claims are barred by the statute of limitations and because the Agreement between Darling and Baywood contained a conclusive presumption of contract termination.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** both of Darling's motions.

## I. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 52(c) governs judgment on partial findings. It provides that, "[i]f during a trial without a jury[,] a party has been fully heard on that issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party . . .

or the court may decline to render any judgment until the close of all the evidence." Fed. R. Civ. P. 52(c). Rule 52(c) is intended to parallel Rule 50(a), *see* Fed. R. Civ. P. 52(c), 1991 advisory committee notes, which governs judgment as a matter of law in jury trials. *See also* 9-50 Moore's Fed. Prac. -- Civ. § 50.06[4][a] ("Rule 52(c) parallels Rule 50 by enabling courts to enter judgment on partial findings against either party on an issue, claim, or defense that cannot be maintained or defeated under controlling law."). "A judgment on partial findings is made after the court has heard all the evidence bearing on the crucial issue of fact, and the finding is reversible only if the appellate court finds it to be 'clearly erroneous.'" Fed. R. Civ. P. 52(c), 1991 advisory committee notes.

Federal Rule of Civil Procedure 59 sets forth the procedures for seeking a new trial and the alteration or amendment of a judgment in an action pending in federal court. *See* Fed. R. Civ. P. 59. The parties agree that "[t]here are three grounds for granting new trials in court-tried actions under Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." *Brown v. Wright*, 588 F.2d 708, 709 (9th Cir. 1978); *see also* Mot. at 2; Opp'n at 2 n.1. The parties also agree that one ground for altering or amending a judgment is if a court committed clear error or its decision was manifestly unjust. *See School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001); *see also* Mot. at 2; Opp'n at 2.

B.  Statute of Limitations

As noted above, in both of its motions, Darling argues that the Court made a clear error with respect to the statute of limitations issue. In its FF&CL, the Court stated that

> the claim for breach of contract did not accrue until October 1, 2004. This was the first time that Darling plainly, expressly, and unequivocally stated that the Agreement had terminated. As found above, there was no clear repudiation of the Agreement prior to this date; Darling's behavior was at best ambiguous and induced Baywood reasonably to believe that Darling considered the Agreement in effect until the Whiting letter of October 1, 2004. This action was therefore timely filed.

FF&CL at 31.

1   Darling contends that the above ruling was clearly erroneous because any breach by Darling
2   occurred either in or about May 1997 or in or about February 2000, but not as late as October 2004.
3   The Court does not agree.

4   The statute of limitations on a breach of contract claim accrues when the defendant breaches
5   its duty to perform an obligation when due or repudiates the contract. *See Romano v. Rockwell*
6   *Internat'l, Inc.*, 14 Cal. 4th 479, 488-89 (1996) ("'There can be no *actual* breach of a contract until
7   the time specified therein for performance has arrived.' Nonetheless, if a party to a contract
8   expressly or by implication repudiates the contract before the time for his or her performance has
9   arrived, an anticipatory breach is said to have occurred.") (emphasis in original).

10  There could be no breach by Darling in or about May 1997 because, at that time, Baywood
11  had failed to make the second deposit and so the contract terminated. Because the contract had
12  terminated, Darling had no obligation to convey the property to Baywood, and Baywood could not
13  sue Darling for breach of contract. No cause of action therefore accrued.

14  *Hollywood Turf Club v. Daugherty*, 36 Cal. 2d 352 (1950), the case on which Darling relies,
15  is inapposite. In *Hollywood*, the court addressed whether a petition for mandamus had been timely
16  filed. Under the California Government Code, "'[t]he complete record of the proceedings, or such
17  parts thereof as are designated by the petitioner, shall be prepared by the agency and shall be
18  delivered to petitioner, within 30 days after a request therefor by him, upon the payment of the
19  expense of preparation and certification thereof . . . . Where petitioner . . . requests the agency to
20  prepare all or any part of the record the time within which a petition may be filed shall be extended
21  until five days after its delivery to him.'" *Id.* at 355 (quoting Cal. Gov't Code § 11523). In the case
22  under consideration, the petitioner asked the agency to prepare the record on August 28, 1948. *See*
23  *id.* On September 24, 1998, the agency notified the petitioner that the record was completed and
24  that the cost was some $100. *See id.* The agency's letter stated: "'Upon payment of the expense
25  involved, the record is ready for delivery to you.'" *Id.* The petitioner did not take any action until
26  November 3, 1948, when it delivered a check to the agency to pay for the cost of the record. *See id.*

27  The court stated that "the time to commence the mandamus proceeding expired five days
28  after -- at least no more than -- it would be reasonably possible to deliver to the commissioner the

-3-

cost of the record and receive it; a transaction that should not have required over a month." *Id.* "If the five days commenced to run from the actual delivery of the record to the petitioner, regardless of when he was notified that it was ready for delivery to him, then he would have it in his power to extend the time indefinitely by a mere failure to pay the cost and accept delivery of the record." *Id.* at 356. The court emphasized: "When the record was ready and its cost fixed and petitioner was so notified, all that could be done by the commissioner had been done. The rest was up to petitioner . . . ." *Id.* (emphasis added).

Darling highlights that, in *Hollywood*, the court arrived at the above conclusion by taking note of the principle that "'[w]hen the plaintiff's right of action depends upon some act which he has to perform preliminary to commencing the suit, and he is under no disability or restraint in the performance of the act, he cannot suspend indefinitely the running of the statute of limitations by a delay in performing such preliminary act.'" *Id.* But that a party against whom a statutory limitation period would otherwise run may not unilaterally extend or nullify that statute is hardly a remarkable position. It has nothing to do with a situation -- as here -- where no cause of action ever accrued in the first place and thus no limitation period would otherwise have run. Baywood's failure to make the second deposit did not simply extend the limitation period; it prevented a cause of action from arising in the first instance.

Contrary to what Darling argues, there was also no breach in or about February 2000. Darling claims that there was a breach at this time because Baywood had made the second deposit and thereafter made statements that it was ready, willing, and able to close. But Darling's contention that "[c]laiming that one is 'ready, willing and able' is an abracadabra to mean either a demand to close a transaction, or a declaration that the time has now arrived to perform, 'or else,'" Reply at 5, is not well supported. The cases cited by Darling do not equate a statement by one party that it is ready, willing, and able to perform with a demand for performance by the other party. Rather, the cases simply reflect that, in order for a party to demand performance by the other party, the party must be ready, willing, and able to perform itself. *See, e.g.*, *Dell'Orto v. Dell'Orto*, 166 Cal. App. 2d 825, 829 (1959) (noting that plaintiffs had made "repeated demands [for conveyance], *and* that plaintiffs stand 'ready, willing and able' to pay the balance due") (emphasis added).

More important, Darling was not required to convey the property to Baywood in or about February 2000 -- even after the second deposit was made -- because at that time there were still outstanding issues that had to be resolved before conveyance could take place.[1] For example, there were title issues that needed to be resolved, *see* Ex. B217 (letter, dated 5/15/90, from Mr. Wasem to Darling) (raising title issues); Ex. B288 (letter, dated May 1, 1997, from Mr. Wasem to Mr. Mellina) (same), a fact that Darling admits. That Baywood was not overly concerned about the title issues is irrelevant; until those issues were resolved, Darling was not required to convey the property. *See* Agreement ¶ 6.3.2 (providing that one condition percent to closing was that "[t]itle to the Subject Property must be subject only to the Permitted Conditions of Title"); *id.* ¶ 5.2 (stating that "[t]itle to the Subject Property shall be conveyed by Seller to Purchaser at Close of Escrow free and clear of all liens, encumbrances, restrictions and rights of way of record, subject only to the following ('Permitted Conditions of Title')"). Also, another condition precedent to closing -- and therefore conveyance of the property -- was that Darling needed to get an estimate for the remediation work and then enter into a guaranteed contract and prepare for a 125% holdback. *See* Agreement ¶ 6.3.3 (listing as another condition percent that "Seller has either completed the Remediation Work or has both entered into the Guaranteed Contract and has delivered to the Escrow Holder instructions to provide for the Holdback described in Paragraph 6.6"). Darling did not resolve Baywood's objections to title, nor did it enter into a guaranteed contract and prepare for a holdback. Instead, it continued to give Baywood reason to believe that the contract was still in place and headed for closing at some undetermined date. Furthermore, Baywood did not make a specific demand upon Darling to close escrow. *Cf. Dell'Orto*, 166 Cal. App. 2d at 829.

---

[1] At the hearing, Darling suggested that, if it did breach the Agreement, the breach was its failure to respond to Baywood's title objections or its failure to remediate to the standards demanded by Baywood -- and not its failure to convey the property. *See also* Mot. at 8. But Baywood's counterclaims demonstrate otherwise. *See* Countercl. ¶ 23 ("Darling breached the Purchase Agreement by failing and refusing, and continuing to fail and refuse, to honor Baywood's tender of purchase price *and transfer of title to the Property to Baywood*") (emphasis added); *see also* Docket No. 101, at 9 (order, dated 8/16/06) ("Contrary to what Darling argues, the breach of which Baywood complains is Darling's refusal to sell the property at issue to Baywood, not any failure by Darling to satisfy its remediation obligations.").

The Court concludes, therefore, as it did before, that the breach occurred on October 1, 2004, when Darling sent the repudiation letter, and that the statute of limitations therefore began to run on that date. This was the date when the basis for the equitable estoppel ended -- *i.e.*, when it was no longer reasonable for Baywood to rely on Darling's implied promise to perform. The cause of action for specific performance did not accrue until then. Darling incorrectly conflates the period during which it was estopped as a tolling of the statute of limitations.

Darling argues still that the Court improperly found that the statute of limitations began to run as of October 1, 2004, because Baywood's theory was that the statute began to run in 2005, only after Darling refused to accept Baywood's tender of the purchase price. *See* Countercl. ¶¶ 17, 23 (referring to Baywood's tender of the purchase price and Darling's refusal to accept). But Baywood's counterclaim did refer to the October 1, 2004, repudiation letter, *see id.* ¶ 16, and by the time of summary judgment, Baywood had clearly taken the position that the statute of limitations began to run as of October 1, 2004. *See* Docket No. 79, at 22 ("Baywood's claim for specific performance did not accrue until October 1, 2004."). That Baywood did not, in the parties' joint pretrial conference statement, explicitly state that the statute of limitations ran as of this date is not dispositive. Nowhere did Baywood foreclose this argument. In fact, in the joint pretrial conference statement, Baywood noted that one disputed fact was whether it was ever informed by Darling, prior to October 1, 2004, that the contract had terminated. *See* Docket No. 150, at 5 (joint pretrial conference statement).

Furthermore, even if Baywood asserted that the breach occurred in 2005, that would not make a material difference for the statute of limitations issue. Whether the statute began to run in 2004 or 2005, Baywood's counterclaim -- filed in January 2006 -- was still timely. The only way that Darling could prevail on the statute of limitations in this case issue was to show that the statute began to run before January 2002. *See* Cal. Code Civ. Proc. § 337 (providing for a four-year statute of limitations for breach of contract). Nothing occurred before January 2002 which demonstrated that Darling had an obligation to close escrow and convey the property or which demonstrated that Darling anticipatorily repudiated the contract by declaring it refused to convey the property. Rather, prior to and beyond January 2002, Darling engaged in conduct which led Baywood to believe that

Darling intended to convey the property. In short, there was no finding by the Court -- and the Court finds none now -- which supports a finding that the statute of limitations began to run prior to January 2002.

In addition, even if Baywood asserted a breach in 2005, the fact that the Court concluded a breach occurred earlier in 2004, if anything, is helpful, not prejudicial, to Darling. By concluding that the breach was on October 1, 2004, rather than in 2005, Baywood had only until October 1, 2008, to file suit rather than until 2009. At the hearing, Darling argued that it was prejudiced because it would have tried the case differently if it had known that October 1, 2004, was the key date but, as noted above, Darling was aware of the importance of the letter based on Baywood's counterclaims and opposition to summary judgment. *See* Counterclaim ¶ 16. More important, Darling already had the incentive to cross-examine Baywood's witnesses, in particular, Larry Wasem, to get them to admit that Baywood knew of Darling's breach or repudiation prior to January 2002.

Finally, the Court notes that, even if it were persuaded by Darling's argument that the statute of limitations began to run in or about May 1997 or February 2000, Darling would be estopped from relying on the affirmative defense. *See Salmons v. Jameson*, 144 Cal. App. 2d 699, 705 (1956) ("[I]t is well settled that a person by his conduct may be estopped to rely upon these defenses (of laches or the statute of limitations) and that where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense."). Darling admits that the facts underlying Baywood's estoppel case with respect to the statute of limitations are the same as those underlying Baywood's estoppel case with respect to contract termination. *See also* Docket No. Docket No. 101, at 11 (order, dated 8/16/06) ("The facts which comprise this estoppel argument largely overlaps with Baywood's argument that Darling waived or is estopped to assert the breach and termination by Baywood in 1997."). Darling's only contention is that the legal test for the two estoppels are different. However, in concluding that Darling was estopped from asserting contract termination, the Court found that Darling's actions led Baywood to believe that Darling would perform under the Agreement -- necessarily implying that no suit was necessary and thus no statute of limitations bar would come into play.

1 B.     Conclusive Presumption

2 In its motion to alter the judgment or for a new trial, Darling argues that the Court also made
3 a clear error with respect to its interpretation of ¶ 3.1 of the Agreement. That paragraph states in
4 relevant part as follows:

> Purchaser's obligation hereunder is expressly contingent upon and subject to Purchaser's approval prior to July 6, 1990 of [*inter alia*] (i) the physical condition of the Subject Property . . . and (vi) any and all other aspects of the Subject Property which Purchaser deems to be material. . . . Purchaser shall evidence the satisfaction of the condition precedent described in this Paragraph 3.1 by depositing the Second Deposit with the Escrow Holder. Purchaser's failure to deliver the Second Deposit with the Escrow Holder by July 6, 1990 shall be *conclusively deemed* to constitute a failure of the condition precedent described in this Paragraph 3.1. . . . If this condition precedent is not satisfied or waived . . . , then this transaction *shall be cancelled*, and on the day after the failure of the condition, the Escrow Holder shall return to the Purchaser the Initial Deposit, together with all interest earned thereon.

13 Agreement ¶ 3.1 (emphasis added). According to Darling, the italicized language above establishes
14 that there was a conclusive presumption of contract termination when Baywood failed to provide the
15 second deposit in May 1997. In other words , Baywood was estopped by the contract from asserting
16 waiver or equitable estoppel.

17 The Court does not agree with Darling's interpretation of ¶ 3.1. This paragraph does not
18 state that there is a conclusive presumption against waiver or equitable estoppel, which the Court
19 found in the instant case. The paragraph merely states that a failure by Baywood to fund the second
20 deposit conclusively establishes that the condition precedent in ¶ 3.1 fails -- in which case, Darling
21 could treat the contract as terminated and sell the property to another party; and Baywood could not
22 come back after failing to make the deposit and assert that the condition precedent in ¶ 3.1 was
23 satisfied and the parties were still in contract in the absence of waiver or estoppel by Darling.

24 Moreover, Darling's argument of estoppel by contract is not convincing because, under
25 California law, estoppel by contract applies only to stated facts and not future conduct. California
26 Evidence Code § 622, cited by Darling, codifies estoppel by contract. It provides that "[t]he *facts*
27 recited in a written instrument are conclusively presumed to be true as between the parties thereto."
28 Cal. Evid. Code § 622 (emphasis added); *cf. Aluminum Co. of Am. v. Essex Group, Inc.*, 499 F.

Supp. 53, 84 (D.C. Pa. 1980) ("[A]ll that need be shown to establish estoppel by contract is that the writing settled or, treated as settled, a fact."). Darling conceded at the argument herein that it could find no California case which applies estoppel by contract to future conduct occurring after contract formation (as opposed to facts asserted in the contract). This is consistent with the fact that § 623, which follows § 622, codifies equitable estoppel, thus implying that estoppel by contract under § 622 does not negate equitable estoppel under § 623. Certainly nothing in this statutory structure suggests a legislative purpose to the contrary. *Cf. Atwater Elementary Sch. Dist. v. California Dep't of Gen. Servs.*, 41 Cal. 4th 227, 233 (2007) (concluding that four-year statute of limitations in California Education Code § 44944(a) "is not absolute" and "may be evaluated in the context of equitable estoppel when the basis of equitable relief is established"; adding that this decision "is supported by the view that courts should not presume the Legislature intended to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication") (internal quotation marks omitted). Indeed, the legal treatise cited by Darling specifically recognizes that estoppel by contract can be overcome by another estoppel, and the case law cited by Darling suggests the same. *See* Corpus Juris Secundum § 11 ("An estoppel against an estoppel sets the matter at large; so, the setting up of an estoppel by deed may be prevented or offset by another estoppel, or a different form of estoppel, against the party seeking to set it up."); *Patco Homes, Inc. v. Rochetti*, 522 N.Y.S.2d 903, 904 (1987) (applying estoppel by contract but taking specific note that there was no allegation that "Patco waived payment in full of the balance of the purchase price"); *Aluminum*, 499 F. Supp. at 84-85 (applying estoppel by contract but taking specific note that "there was no conduct by Essex to warrant an estoppel in pais preventing Essex from contending that ALCOA should be estopped [by contract]").

C.   Cisterns

Finally, in its motion to alter judgment or for a new trial, Darling argues that the Court clearly erred by ordering Darling to clean up the cisterns. According to Darling, Baywood asked only for conveyance of the property, and not an order requiring further cleanup. This argument is without merit. Baywood asked for enforcement of the Agreement, *see* Countercl. ¶¶ 30-31, and as

the Court found, the cisterns were part of the remediation obligations of Darling under the Agreement.

## II. CONCLUSION

Accordingly, for the foregoing reasons, the Court denies both Darling's motion to alter judgment or for a new trial and Darling's renewed motion for judgment on partial findings.

This order disposes of Docket Nos. 211 and 214.

IT IS SO ORDERED.

Dated: October 2, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge