UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLING INTERNATIONAL, INC., | No. C-05-3758 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES, EXPERT FEES, AND COSTS** |
| BAYWOOD PARTNERS, INC., *et al.*, | |
| Defendants. | **(Docket No. 215)** |
| _____/ | |

Defendant Baywood Partners, Inc. has moved for an award of attorney's fees, expert fees, and costs. The Court held a hearing on the motion on November 7, 2007, at which time it ordered that Baywood provide to Darling the timesheets for its attorneys, with redactions for privileged information only. The Court also ordered supplemental briefing based on the production. Having reviewed the parties' briefs and accompanying submissions, including the supplemental briefing, and having considered the oral argument of counsel, the Court hereby **GRANTS** Baywood's motion.

**I. DISCUSSION**

A. Prevailing Party

In its papers, Darling argues that Baywood should not be awarded any fees or costs as it is not the prevailing party in the litigation. This argument is without merit.

Darling's argument is in essence that there is no prevailing party in the instant case under California Civil Code § 1717. The California Supreme Court has instructed that, for purposes of § 1717, "in deciding whether there is a 'party prevailing on the contract,' the trial court is to compare

the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Id.* Substance rather than form should be respected and to this extent the trial court should be guided by equitable considerations. *See id.* at 877; *see also Jackson v. Homeowners Ass'n Monte Vista Estates-East*, 93 Cal. App. 4th 773, 787 (2001) (noting that "'the continuing theme of the Legislature's discussion of section 1717 has been the avoidance of narrowly defined procedures, which have been seen as favoring the dominant party, in favor of an equitable consideration of who should fairly be regarded as the winner'"). That is, "status as the 'party prevailing on the contract' is ascertained not by technicalities of pleading and procedure but by a pragmatic assessment of the parties' ultimate positions vis-à-vis their litigation objectives as reflected in pleadings, prayers, and arguments." *Estate of Drummond*, 149 Cal. App. 4th 46, 51 (2007).

In the instant case, it is clear that both parties' main objective was to get ownership of the property at issue -- Darling by claiming Baywood had essentially forfeited any contractual right to title, and Baywood by asserting it maintained a legal right to enforce the sales contract. This Court found that waiver and estoppel conferred upon Baywood the right to enforce the sales contract and was legally entitled to title. This verdict clearly establishes Baywood as the prevailing party. That Baywood did not obtain 100% of the relief it sought (*e.g.*, enforcement of the indemnification clause) does not gainsay its substantial victory in this case.

B.  Expert Fees and Costs

Darling has not opposed Baywood's request for expert fees and costs, except to the extent it claimed that Baywood is not the prevailing party in the case. Having concluded that Baywood is in fact the prevailing party, the Court hereby grants Baywood's request for expert fees and costs. More specifically, expert fees in the amount of $186,256.71 are awarded, and nonstatutory costs in the amount of $174,526.32. *See* Mot. at 1 (asking for nonstatutory costs of $163,388.15); Reply at 8 (asking for additional nonstatutory costs of $8,056.68); 2d Supp. Miller Decl. ¶ 9 (noting that an additional $3,081.49 in costs were incurred since October 23, 2007).

C. <u>Attorney's Fees</u>

As a preliminary matter, Darling's contention that no attorney's fees at all should be awarded because Baywood's fee claim "shocks the conscience" is not well taken. At the November 7, 2007, hearing herein, Darling's counsel conceded that "the overall magnitude and level of the effort expended [by Miller Starr Regalia] is not beyond the pale, is not shocking and not suspect." Docket No. 254 (Tr. at 8:3-10). The Court agrees. This case was vigorously litigated with substantial resources devoted by both sides who were represented by able and experienced counsel. Darling mounted a formidable opposition. Moreover, Darling's decision not to disclose the attorney's fees it incurred in litigating this case strongly suggests that Baywood's fees compares favorably to those incurred by Darling. At the very least, Darling has not suggested the contrary.

Furthermore, Darling's claim that Baywood conducted unnecessary discovery (in particular, discovery related to Darling's internal records and third-party discovery) and further prolonged litigation by unreasonably interpreting the Purchase Agreement, is not persuasive. First, Darling has failed to show that the discovery at issue was unnecessary. That Baywood did not use all of the discovery sought at trial does not establish that the discovery was unreasonable. The issue is whether, at the time, it was reasonable for Baywood to pursue the discovery. *Cf. Freitag v. California Dep't of Corr.*, No. C 00-02278 TEH, 2003 U.S. Dist. LEXIS 26579, at *18 (N.D. Cal. Oct. 17, 2003) (noting that, "[i]n the Ninth Circuit, fees for an unsuccessful motion are not automatically excluded" and that "an ultimately successful plaintiff should be compensated for steps along the path to victory, even if every step is not successful, where the motion constituted 'a method of pursuing her ultimately successful claims,' was a necessary stage of the case, or otherwise contributes to the plaintiff's ultimate success'"). *See also Sundance v. Municipal Court*, 192 Cal. App. 3d 268, 274 (1987) (stating that a trial court has discretion to determine whether time spent on an unsuccessful legal theory was reasonably incurred).[1] Taking into account all of the

---

[1] The Court acknowledges that the issue in the instant case is what constitutes a reasonable fee pursuant to § 1717 and not a federal statute. Nevertheless, in evaluating reasonableness, the Court looks to both state and federal authorities. Neither side has articulated any material difference between state and federal law in assessing reasonableness, particularly with respect to the arguments made in the parties' briefs (*e.g.*, overstaffing, block billing).

-3-

circumstances, the Court finds that Baywood's discovery efforts were reasonable. That the discovery sought by Baywood constituted in large part corroborative rather than direct evidence of Darling's knowledge and state of mind does not mean that the discovery was unreasonable. Corroborative evidence is not necessarily repetitive nor duplicative and, especially in light of the clear and convincing standard applicable to waiver, Baywood's seeking out of corroborative evidence was justified. Moreover, in the instant case, the corroborative evidence was substantial and persuasive.

Second, although the Court did not agree with Baywood's interpretation of the Agreement, ultimately, the litigation was in large part prolonged and enlarged by the factual disputes pertaining to whether there had been a waiver or estoppel -- crucial issues on which Baywood ultimately prevailed.

Accordingly, the issue for the Court is not whether attorney's fees should be awarded but rather how much should be awarded. Because Darling does not contest any of the hourly rates for Baywood's attorneys or supporting staff as unreasonable (with one exception discussed below), the main question is whether the number of hours for which Baywood seeks compensation is reasonable. Where Baywood has provided documentation of attorney's fees incurred, Darling has the burden of providing evidence to challenge the accuracy and reasonableness of hours charged. *See McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995).

1. <u>Unnecessary Duplication of Work</u>

Darling contends that there should be a reduction in the fee award because of the unnecessary duplication of work. With limited exceptions, the Court does not agree.

First, the fact that there were more than twenty timekeepers on the case is not dispositive. Darling does not dispute -- and the billing records bear out -- that Mr. Miller, Mr. Pahland, and Ms. Tusbota, along with one paralegal (either Ms. Ramsey or Mr. Khalil), billed the large majority of hours. According to Baywood, 85% of the case billings were performed by one partner, two associates, and one paralegal. To the extent there were inefficiencies manifested by a significant number of meetings, that inefficiency is addressed below.

Second, Darling's argument that there were seven partners who incurred time simply to "look[] over Mr. Miller's shoulder" or "chaperon[e]" him is not well founded. Supp. Opp'n at 4. To the extent other partners were involved, Baywood has established their involvement was for good reason. Moreover, Darling's Exhibit A reflects that only one partner spent any significant time on the case, *i.e.*, Mr. Frassetto, and his involvement in the case was justified as he was not only the primary drafter of the Agreement at issue but also the primary client contact person for over twenty years. *See* Miller Decl. ¶ 16. The Court, however, does agree with Darling that Baywood should not be compensated for the time that Mr. Frassetto spent on the case as a witness rather than as a lawyer. Accordingly, the Court excludes the following hours.

| Date | Hours | Description |
|---|---|---|
| 5/4/2006 | 1.2 hours | Attend deposition |
| 5/1/2007 | 1.5 hours | Review of Deposition Transcripts; review of Brief; preparation for Testimony |
| | | [0.5 hours allocated to preparation for testimony][2] |
| 5/3/2007 | 1 hour | Letter to opposing counsel; conference with Daniel Miller; letter to opposing counsel; preparation for Testimony |
| | | [0.25 hours allocated to preparation for testimony] |
| 5/11/2007 | 4 hours | Preparation for Testimony; attend Trial; conference with Daniel Miller |
| | | [3 hours allocated to preparation for testimony and attend trial] |

**(1.2 + 0.5 + 0.25 + 3 hours) x $500 = $2,475.**

Third, that more than one attorney attended a hearing or deposition does not in and of itself establish unnecessary duplication of work. Furthermore, it appears that there were few occasions in which there was more than one attorney at a hearing or deposition (*e.g.*, 36 out of 39 depositions were staffed by one attorney), and on those few occasions there was a reason to have more than one attorney. For example, it was reasonable to have more than one attorney present for the hearing on the cross-motions for summary judgment given the importance of that hearing. Similarly, it was reasonable to have more than one attorney present for the depositions of key Darling employees or

---

[2] Because of the block billing by Mr. Frassetto, the Court has used its best judgment to determine what is a reasonable number of hours to allocate.

-5-

agents, especially when late document productions were involved. The Court, however, does not see the necessity of having more than one attorney attend a settlement conference, *i.e.*, both Mr. Miller and Mr. Frassetto, even taking into account Mr. Frassetto's role as drafter of the Purchase Agreement and primary client contact person. The Court, therefore, shall exclude the time billed by Mr. Frassetto for such (3.5 hours on August 25, 2006). *See* Docket No. 105 (civil settlement minutes). **3.5 hours x $500 = $1,750.**

Finally, Darling contends that there was unnecessary duplication of work for, in particular, the trial brief and the review of video deposition testimony. With respect to the trial brief, the Court does not agree with Darling's assertion that more than 650 hours, for almost $200,000, were spent on that document. The Court has reviewed Exhibit B of the Hahn declaration and, while each time entry does include a reference to work on the trial brief, there are also other tasks that are itemized. On the other hand, Darling was not able to parse out the time spent on the trial brief because of the block billing by Baywood's attorneys. Because, as noted below, block billing is problematic inasmuch as the practice makes it difficult to discern how much time was spent on a particular task, such as the trial brief, the Court makes an adjustment discussed below.

As for the review of video deposition testimony, it does appear that, on March 28 and 29, 2007, Mr. Miller, Mr. Pahland, Ms. Tsubota, and Mr. Khalil collectively reviewed video deposition testimony, and at a not insignificant expense. Baywood contends that this review was necessary for "witness assessment (since MSR staffed almost all depositions with just one lawyer, time management (to allow each attorney to gauge time needed to meet court time constraints for trial presentation), and case strategy" and further notes that the attorneys charged reduced rates for this time. Supp. Reply at 7 n.6. While the Court appreciates the discounted rate, it does not see the value of having the entire trial team collectively review the video deposition testimony. Review by two attorneys and the paralegal should have been sufficient. Accordingly, the Court shall exclude

10 hours to account for the overstaffing on this matter. The Court shall apply an average hourly rate of $151 (reflecting the reduced charges).[3] **10 hours x $151 = $1,510.**

2.  Failure to Delegate

Darling argues that there should be a further reduction in the fee award because Mr. Miller charged his full partner rate for doing associate-level work and because Mr. Pahland and Ms. Tsubota charged their attorney rates for doing clerical- and secretarial-type work. *Cf. Missouri v. Jenkins*, 491 U.S. 274, 288 (1989) (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them").

Having reviewed Exhibit D to the Hahn declaration, the Court does not agree with Darling's characterization that "Mr. Miller often functioned as a *de facto* associate, while charging partner-level fees." Opp'n at 7. Legal research, for example, is not always a routine task and may require the involvement of a partner. The same is true with respect to discovery. As for the drafting of documents, it is not always a low-level task, even if the document at issue is simply a case management statement or a letter. Finally, even if some of the tasks listed in Exhibit D should have been delegated to associates, it is notable that Mr. Miller's standard hourly rate of $450 is a rate often charged by senior-level associates in the Bay Area. The Court also notes that the Miller Starr Regalia firm is substantially smaller than the Latham Watkins firm, and thus it is not surprising that the former's division of labor would differ from the latter's.

That being said, there is merit to Darling's position that Mr. Pahland and Ms. Tsubota, among others, performed purely clerical and/or secretarial tasks for which there should be no compensation. Baywood's argument that its attorneys "do not maintain a 24-hour clerical support service" is unavailing. Supp. Reply at 8 n.7. The bottom line is that it is not reasonable for a law firm to charge a client for the time an attorney spends on purely clerical or secretarial tasks, such as transmitting materials to a client, making travel arrangements, copying documents, setting up and taking down a war room, serving documents, coordinating a court reporter, and so forth. Having

---

[3] On March 28, 2007, the reduced charges were as follows: $144 per hour for Mr. Pahland; $124 per hour for Ms. Tsubota; and $187 per hour for Mr. Miller. On March 29, 2007, the reduced charges were as follows: $114 per hour for Ms. Tsubota; $124 per hour for Mr. Pahland; and $211 per hour for Mr. Miller. The average hourly reduced rate was therefore $151.

reviewed Exhibit E to the Hahn declaration, and taking into account that the time entries listed also cover tasks that were not purely clerical or secretarial in nature, the Court hereby excludes 15 hours at an average hourly rate of $345. *See* Miller Decl. ¶¶ 18-20 (noting that the standard hourly rate for Mr. Miller is $450, for Mr. Pahland $310, and for Ms. Tsubota $275). **15 hours x $345 = $5,175.**

3. Unjustified Time

Darling also argues for a reduction in the fee award based on what it calls unjustified time. The Court addresses each item of alleged unjustified time below.

a. Attorney Conferences

Darling claims that Baywood's attorneys charged for conferences or meetings that appear not to have taken place: "On numerous occasions, one attorney's timesheet bills time for meeting with another attorney, but the second attorney has no record of such a meeting taking place." Supp. Opp'n at 8. In response, Baywood notes that its attorneys did not charge for every minute spent on the litigation: "Oftentimes, for example, Mr. Frassetto and Mr. Miller would not bill for time spent meeting with associates. Thus, the fact that one time entry appears for a two person meeting (with no time charged by the second person) does not mean the meeting was fabricated and did not occur . . . ." Supp. Reply at 9.

While the Court agrees with Baywood that a meeting can have taken place even though one attorney has billed for the meeting and another has not, there are a large number of entries contained in Exhibit F (to the Hahn declaration) where there are discrepancies. However, in many of them, there are corroborating entries -- *e.g.*, where two attorneys make reference to a meeting but the third attorney referenced in the timesheet did not record a timesheet entry. The Court considers these corroborated entries sufficient to establish the accuracy of the accounts of meetings. Uncorroborated references -- where only one attorney records a meeting -- is more problematic. The Court estimates that there are roughly 200 such entries. As it appears that most meetings, where they are separately identified and not block billed, last an average of 0.2 hours, the Court estimates that 40 hours of meetings are not sufficiently substantiated by Baywood. Applying an average rate of $345 per hour, the Court deducts a total of $13,800. The Court further finds this discount

additionally warranted to reflect the inefficiencies of multiple counsel which required a substantial number of internal meetings and conferences. **40 hours x $345 = $13,800.**

### b. Easement Issues

According to Darling, a fee reduction is also appropriate as Baywood is seeking fees for work that its attorneys did on the easement issues, even though the easement issues were bifurcated and never adjudicated. In response, Baywood admits that "apportionment may be appropriate" here but then goes on to argue for compensation still since, "but for Darling's contract claims, Darling would have had no cause to raise the easement issues." Supp. Reply at 10 n.9.

Baywood's point is well taken. However, work on the easement issues are not compensable because this was a discrete issue on which Baywood did not prevail. *Cf. Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129 (1979) ("Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action."). Baywood estimates $8,000 in fees were spent on the easement issues. Taking into account that some of the entries redacted by Baywood concerned easement issues, the Court finds that a more appropriate reduction is **$9,000**.

### c. Demurrer

Darling argues that the hours spent by Mr. Pahland working on a demurrer on September 26-28, 2005, should be excluded since there are no demurrers in federal court. However, as Baywood points out, a demurrer is essentially a motion to dismiss, and there is no dispute that Baywood filed a motion to dismiss shortly after the dates that Mr. Pahland spent working on a demurrer. Accordingly, the Court shall not exclude any hours.

### d. Mr. Holman

According to Darling, work done by Mr. Holman on November 28, 2005, should also be excluded from any fee award because he was doing work related to Baywood's motion to dismiss even though all briefing on the motion had already been completed. The Court shall not exclude any hours. It is entirely unremarkable that, even though all briefing had been completed, additional work was done with respect to the motion in advance of the hearing on the motion.

e. <u>Mr. Pahland</u>

Darling points out that, on July 12, 2006, Mr. Pahland billed for time spent on a reply brief even though the opposition brief had not yet been filed. Baywood does not respond to this argument in its supplemental reply. Accordingly, the Court shall make a reduction of hours.

There were multiple tasks performed by Mr. Pahland on July 12, 2006. Taking this fact into account, the Court finds that a reduction of 3 hours at a rate of $310 per hour is appropriate. *See* Miller Decl. ¶ 19 (stating that Mr. Pahland's standard hourly rate is $310). **3 hours x $310 = $930.**

f. <u>CSE</u>

Darling notes that an unidentified person with the initials "CSE" charged more than 24 hours per day on October 31, 2006; January 31, 2007; and February 28, 2007. While this does appear problematic at first blush, Baywood has adequately explained these charges in its supplemental reply. *See* Supp. Reply at 10 ("'CSE' is simply a shorthand for case clerk. Steve Waterman was the primary case clerk on the case, billing at $25 per hour, and his time is reflected in a one-time entry per month as a matter of MSR billing policy."). The Court, therefore, shall not make any reduction in the fee award on this basis.

g. <u>Mr. Miller</u>

Darling points out that, on April 26, 2007, Mr. Miller charged Baywood for time spent on the pre-trial conference, even though the conference had actually taken place a day earlier. In response, Baywood explains that Mr. Miller was working on follow-up matters ordered by the Court at the pretrial conference. The Court, therefore, shall not exclude any hours.

4. <u>Unreasonable Use of Time</u>

Darling charges Baywood's attorneys with having inefficiently used their time and making "repeated efforts due to errors." Supp. Opp'n at 13. The Court addresses each alleged inefficiency or repetitive effort below.

a. <u>Complaint Comparison</u>

Darling claims that Mr. Pahland wasted time on January 27, 2006, by "review[ing] complaint and compar[ing] to old" when he could have accomplished this task by using a redlined version of the amended complaint. However, that Mr. Pahland reviewed the amended complaint and compared

it to the old does not mean that he did not use a redlined version of the amended complaint. Accordingly, the Court does not make any reduction of hours here.

### b. Computer Files

Darling contends that Baywood's attorneys further wasted time by failing to conduct a proper search for documents in the first instance -- more specifically, by failing to conduct a proper search of Baywood's computer files. Baywood does not adequately address this contention in its supplemental reply. Baywood, for example, argues that Darling forced Baywood to perform advanced Boolean searches with broad terms, to look into whether personal computers were used for business purposes, and so forth but never addresses the basic contention that Baywood failed to do an adequate search the first time around. Accordingly, the Court shall make a reduction of hours. Taking into account that Exhibit J of the Hahn declaration covers tasks unrelated to the additional search for documents, the Court finds that a reduction of 12 hours at an hourly rate of $310 is appropriate. *See* Miller Decl. ¶ 19 (stating that Mr. Pahland's standard hourly rate is $310). **12 hours x $310 = $3,720.**

### c. Research on the Court and Federal Practice

According to Darling, Baywood's attorneys spent an unreasonable amount of time researching the undersigned. Had Baywood's attorneys actually spent nineteen hours researching the undersigned, the argument would have merit. However, Exhibit K to the Hahn declaration reflects that, on the time entries cited by Darling, tasks in addition to researching the undersigned were undertaken. Taking that fact into account, it is likely that only five hours or so were spent on the research of the undersigned, and that is not an unreasonable amount of time.

Darling argues further that Baywood's attorneys spent an unreasonable amount of time "familiarizing itself with the basics of federal practice." Supp. Opp'n at 13. The Court has reviewed Exhibit K and does not find this assertion substantiated.

### d. Mr. Essig

Darling contends that Baywood's attorneys wasted time with respect to their use of the accounting expert Mr. Essig as he was not qualified to opine about Darling's state of mind. As Baywood contends, there is no merit to this argument. The Court did not bar Mr. Essig from

-11-

testifying at the bench trial because Mr. Essig's testimony could -- and in fact did -- assist the Court in understanding the accounting term "asset held for sale."

### 5. Excessive Redactions and Vague Narratives

According to Darling, excessive redactions have prevented it from doing a proper analysis of Baywood's request for attorney's fees. In response, Baywood claims that "less than 10% of the narrative descriptions on MSR's bills were redacted." Supp. Reply at 10. Baywood also claims that it redacted only (1) issues that Darling could have raised but never did and (2) the names of witnesses that were not deposed or called at trial. The Court has reviewed Baywood's in camera submission of its attorney's billing records and concludes that there are many instances in which Baywood redacted for privilege where such a claim is questionable. Nonetheless, the Court has reviewed *in camera* the redactions and concludes that the redactions were not material to the issues at hand in assessing the reasonableness of Baywood's fees. *See* Civil L.R. 54-6(b)(2) (court has discretion to conduct an *in camera* review of attorney time records in evaluating a fee application).

Darling further contends that, excessive redactions aside, the fee award should be reduced because the narratives in the time entries are so vague that it cannot determine whether the hours claimed were actually and reasonably expended. The only concrete example to which Darling points in its brief, however, is Mr. Miller's use of phrases such as "pretrial materials" and "trial preparation." With respect to this matter, the Court understands that, during trial in particular, counsel may be hard pressed to provide detailed time entries. Even so, there still must be sufficient specificity in order for the opposing party as well as the Court to assess the reasonableness of the number of hours spent on a particular task -- particularly, if a large number of hours are being claimed. On the other hand, the Court is not persuaded that Baywood should not be barred from being awarded any compensation for the time Mr. Miller spent on pretrial materials and trial preparation. The issue here raises the same concerns engendered by block billing; it disables opposing counsel and the Court from assessing with specificity the reasonableness of time spent on particular issues and tasks. The Court addresses the problem below.

6. <u>Block Billing</u>

Finally, Darling argues that there should be a reduction in the fee award because Baywood's attorneys engaged in block billing. In response, Baywood argues that a court may still rely on block billing statements to award fees, but that is not disputed by Darling. Darling simply asks that, because of the block billing, there be a blanket reduction of time to account for the practice.

Baywood also asserts that "[t]he concern over block billings arises in cases where the Court is charged with apportioning fees between claims that allow for fee recovery (*e.g.*, contract claims) and claims that do not (*e.g.*, certain tort claims)." Supp. Reply at 13; *see also Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 689 (2000) (noting that "the blocked-billing entries render it virtually impossible to break down hours on a task-by-task basis between those related to the Brown Act violation and those that are not"). But block billing is problematic for additional reasons. As noted above, block billing is problematic because the practice makes it more difficult to determine whether the amount of time spent on a specific task was reasonable. *See Welch v. Metropolitan Life Insurance Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (noting that "block billing makes it more difficult to determine how much time was spent on particular activities"); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (noting that "many time records lump together multiple tasks, making it impossible to evaluate their reasonableness").

Baywood further argues that there is no requirement that block billed time be reduced and that any discount for block billing must take into account whether the practice was part of all of the billing records, or just some. *See, e.g.*, *Welch*, 480 F.3d at 948 (stating that the lower court had "clearly erred in applying a 20 percent reduction to all of Welch's requested hours" because "barely more than half of all hours submitted by Welch's counsel were block billed" -- *i.e.*, "[r]educing the total hours by 20 percent . . . effectively served as a 40 percent penalty on those hours actually block billed, well above the range justified by the Fee Report" of the California State Bar's Committee on Mandatory Fee Arbitration, which concluded that block billing may increase time by 10% to 30%). With respect to the first argument, it is evident that case law -- both federal and state -- that addresses block billing disfavors the practice; where employed, the courts typically makes an

-13-

1 adjustment ranging from 5% to over 30%,[4] which is consistent with the finding of the California State Bar's Committee on Mandatory Fee Arbitration that block billing may increase time by 10% to 30%.[5]

As to Baywood's second argument, the Court does agree that, under *Welch*, a deduction for block billing must take into account whether the practice was part of all of the billing records, or just some. Although Baywood asserts that a significant portion of the time entries are not block billed, the billing records show otherwise. There are a significant number of entries where disparate activities are lumped together in one entry for an entire day.[6] The Court estimates that roughly 40% of the billings may be considered such block billing. The Court finds that a 10% reduction (at the lower end of the scale) is appropriate because there is little reason to doubt the overall veracity of the records, and the overall fee bill of the Miller Starr Regalia time is not unreasonable as discussed above. Accordingly, after taking into the exclusions itemized above,[7] which leave an attorney fee

---

[4] *See, e.g.*, *Cadkin v. Bluestone*, No. CV 06-0034 ER, 2007 U.S. Dist. LEXIS 83582, at *8 (C.D. Cal. Apr. 9, 2007) (reducing block-billed entries by 20%); *Molefi v. Oppenheimer Trust*, No. 03 CV 5631 (FB) (VVP), 2007 U.S. Dist. LEXIS 10554, at *21-24 (E.D.N.Y. Feb. 15, 2007) (making a reduction of 15% to account for block-billing and unreasonable time entries); *Delgado v. Village of Rosemont*, No. 03 C 7050, 2006 U.S. Dist. LEXIS 80284, at *22 (N.D. Ill. Oct. 31, 2006) (making reduction of 35% because of, *inter alia*, block billing); *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 U.S. Dist. LEXIS 34557, at *17-18 (N.D. Tex. Dec. 20, 2005) (noting that reduction usually ranges from 10% to 30%); *Navarro v. General Nutrition Corp.*, No. C 03-0603 SBA, 2005 U.S. Dist. LEXIS 39726, at *41 (N.D. Cal. Sept. 22, 2005) (making a 10% reduction because of block billing, which prevented the court from excluding hours based on, *e.g.*, clerical work, duplicative work, and work that unnecessarily prolonged the proceedings); *Oglesby v. Western Stone & Metal Corp.*, CV 99-492-BR, 2001 U.S. Dist. LEXIS 14439, at *26 (D. Or. Sept. 10, 2001) (reducing block-billed entries by 25%); *Gundlach v. NAACP*, No. 3:03-cv-1003-J-32MCR, 2005 U.S. Dist. LEXIS 45524, at *13 (M.D. Fla. Aug. 16, 2005) (making reduction of 30% to address, *inter alia*, block billing).

[5] The Court acknowledges Baywood's criticism of the Fee Report of the California State Bar's Committee on Mandatory Fee Arbitration. However, the Court is not convinced that the Fee Report is deserving of no consideration, especially in light of the *Welch* case and the Court's independent research which reveals case law consistent with the Report.

[6] Where multiple activities are related such as preparing for a deposition and taking the deposition, the Court does not consider the entry to be block billing. Only a mass entry of disparate tasks which hinders an assessment of reasonableness of time spent on a particular task is considered block billing. *See Charnay v. Cobert*, 145 Cal. App. 4th 170, 177 n.8 (2006) (describing block billing as the practice of "billing for multiple tasks in a single entry"); *Olson v. Automobile Club of S. Cal.*, 139 Cal. App. 4th 552, 561 (2006) (stating that block billing consists of "describing all tasks performed on a day and giving the total time spent that day").

[7] The exclusions are as follows: $2,475; $1,750; $1,510; $5,175; $13,800; $9,000; $930; and $3,720. The total sum is $38,360.

1  award of $2,378,865.50 ($2,417,225.5 - $38,360), a 10% reduction for 40% of the billings results in
2  a final fee award of $2,283,710.88 ($2,378,865.50 - ($2,378,865.50 x 40% x 10%)).

3      7.    <u>Summary</u>

4  In its motion, Baywood has asked for a total of $2,417,225.50 in attorney's fees. *See* Miller
5  Decl. ¶ 11 (asking for $2,219,399.50 in fees as of July 23, 2007); Supp. Miller Decl. ¶ 2 (asking for
6  additional fees of $135,225.50 incurred between July 23, 2007, and October 22, 2007); 2d Supp.
7  Miller Decl. ¶ 9 (asking for additional fees of $62,600.50 incurred since October 23, 2007). Taking
8  into account all of the above, the Court finds that a reasonable fee award is $2,283,710.88. The
9  Court denies Baywood's request that Darling's attorney's time records be produced. Baywood
10 arguably could have sought those records or summaries thereof in discovery but did not.

11 **II.   <u>CONCLUSION</u>**

12 For the foregoing reasons, the Court grants Baywood's motion for fees and costs. Baywood
13 is hereby awarded expert fees in the amount of $186,256.71; nonstatutory costs in the amount of
14 $174,526.32; and attorney's fees in the amount of $2,283,710.88. Although this fee award is
15 substantial, it is reasonable given the benefit achieved (obtaining title to property which the evidence
16 at trial suggest at one point was worth $10 million), the effort expended in this factually complex
17 and document intensive case which was vigorously contested by able counsel for Darling, and the
18 high quality of legal work performed by Miller Starr Regalia.

19 This order disposes of Docket No. 215.

21 IT IS SO ORDERED.

23 Dated: December 19, 2007

24                                              EDWARD M. CHEN
                                             United States Magistrate Judge